THE METHODIST HOSPITALS, INC., Petitioner,

v.

LAKE COUNTY PROPERTY TAX ASSESSMENT BOARD OF APPEALS, Respondent.

No. 45T10–0411–TA–50.

Tax Court of Indiana.

Jan. 10, 2007.

David H. Kreider, Earle F. Hites, Hodges & Davis, P.C., Merrillville, IN, Attorneys for Petitioner.

Steve Carter, Attorney General of Indiana, Andrew W. Swain, Special Counsel, Tax Division, John D. Snethen, Deputy Attorney General, Indianapolis, IN, Attorneys for Respondent.

FISHER, J.

The Petitioner, the Methodist Hospitals, Inc. (Methodist), appeals the final determination of the Indiana Board of Tax Review (Indiana Board) valuing its Primary Care Associates medical offices (PCAs) for the 2000 tax year. The question before this Court is whether Methodist made a prima facie case that the PCAs qualify for a charitable purposes exemption.

## FACTS AND PROCEDURAL HISTORY

Methodist is an Indiana not-for-profit corporation that owns and operates two acute care hospitals, one in Gary, Indiana (Northlake Campus) and the other in Merrillville, Indiana (Southlake Campus). The Internal Revenue Service recognizes Methodist as a 501(c)(3) organization.[1]

Methodist also owns and operates two PCA medical offices, which are located in Griffith, Indiana and in Merrillville (on Methodist's Southlake Campus). The PCAs are used as primary care medical offices. Methodist performs all PCA billing and collections. Methodist also deposits payments for the services rendered at the PCAs into the same bank account it uses for its acute care hospitals.

The physicians and the other staff members who work at the PCAs are employees of Methodist. Methodist, however, does not send patients to the PCAs. Rather, members of the general public seek out the medical services offered at the PCAs from Monday through Saturday.[2] In addition, PCA physicians can admit their patients into Methodist's acute care hospitals if necessary and treat inpatients at the hospital when appropriate.[3] (See Cert. Admin. R. at 24–25 (footnote added).)

On May 10, 2000, Methodist sought a charitable purposes exemption for both PCA locations in Griffith and Merrillville. On December 31, 2002, the Lake County Property Tax Assessment Board of Appeals (PTABOA) determined that the PCA offices and the personal property therein were taxable.

On January 27, 2003, Methodist filed Form 132 Petitions for Review (Forms

---

1. Internal Revenue Code § 501(c)(3) exempts from federal income taxes those corporations that meet specified criteria.

2. The physicians at the PCAs specialize in the following areas of medicine: obstetrics/gynecology, pediatrics, internal medicine, and family medicine. (See Cert. Admin. R. at 5, 58, 110, 163, 475.)

3. Indeed, at least one PCA physician, "deliver[ed] babies and [performed] surgeries" in Methodist's inpatient facility. (See Cert. Admin. R. at 465.)

132) with the Indiana Board. On September 21, 2004, after conducting a hearing on Methodist's Forms 132, the Indiana Board issued its final determination in which it denied the charitable purposes exemption for both PCA locations.

Methodist filed an original tax appeal on November 2, 2004. The Court heard the parties' oral arguments on December 2, 2005. Additional facts will be supplied as necessary.

## STANDARD OF REVIEW

█ This Court gives great deference to final determinations of the Indiana Board when it acts within the scope of its authority. *See College Corner, L.P. v. Dep't of Local Gov't Fin.*, 840 N.E.2d 905, 907 (Ind. Tax Ct.2006). Consequently, the Court will reverse a final determination of the Indiana Board only if it is:

(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(2) contrary to constitutional right, power, privilege, or immunity;

(3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory jurisdiction, authority, or limitations;

(4) without observance of procedure required by law; or

(5) unsupported by substantial or reliable evidence.

IND.CODE ANN. § 33–26–6–6(e)(1)–(5) (West 2007).

█ The taxpayer bears the burden of proving that it is entitled to the exemption it seeks. *Indianapolis Osteopathic Hosp., Inc. v. Dep't of Local Gov't Fin.*, 818 N.E.2d 1009, 1014 (Ind. Tax Ct.2004), *review denied.* In Indiana, an exemption is strictly construed against the taxpayer and in favor of the State because it releases property from the obligation of bearing its fair share of the cost of government and serves to disturb the equality and distribution of the common burden of government upon all property. *Id.*

## DISCUSSION AND ANALYSIS

█ On appeal, Methodist maintains that the Indiana Board clearly erred in determining that the PCAs did not qualify for a charitable purposes exemption as they "[provide] primary care services as part of a continuum of care [that] is substantially related to and supportive of its inpatient care facilities." (*See* Cert. Admin. R. at 7, 60, 112, 165.) (*See also* Pet'r Br. at 11–12.) In response, the PTABOA asserts that the Indiana Board's final determination denying the charitable purposes exemption was proper.[4] (*See* Resp't Br. at 2 (footnote added).)

---

4. The PTABOA also asserts that Methodist's appeal should be dismissed because it failed to timely file the administrative record within 30 days of initiating its original tax appeal. (*See* Resp't Br. at 2 n. 1.) The Court, however, disagrees.

The Indiana Supreme Court has recently explained that compliance with Tax Court Rule 3(E) is, *ultimately*, what governs in original tax appeals. *See Wayne County Prop. Tax Assessment Bd. of Appeals v. United Ancient Order of Druids–Grove # 29*, 847 N.E.2d 924, 928 (Ind.2006). Indiana Tax Court Rule 3(E) provides that "[i]n original tax appeals [from final determinations of the Indiana Board]

... [t]he petitioner shall transmit a certified copy of the record to the Tax Court *within thirty (30) days after having received notification from the Indiana Board [ ] that the record has been prepared.*" Ind. Tax Court Rule 3(E) (emphasis added).

Here, Methodist initiated its original tax appeal on November 2, 2004. Methodist received notice from the Indiana Board on November 19, 2004 that the administrative record was prepared. (*See* Pet'r Reply Br. at 3 (citing Cert. Admin. R. at ii).) Thus, Methodist had until December 19, 2004 to file the administrative record. Methodist filed the administrative record by December 15, 2004.

In Indiana, all tangible property is subject to taxation. *See* IND.CODE ANN. § 6–1.1–2–1 (West 2000). Nevertheless, the Indiana Constitution provides that the legislature may exempt certain categories of property. *See* IND. CONST. art X, § 1. Pursuant to this grant of authority, the legislature enacted Indiana Code § 6–1.1–10–16(a), which provides that "[a]ll or part of a building is exempt from property taxation if it is owned, occupied, and used [ ] for ... charitable purposes." *See* IND. CODE ANN. § 6–1.1–10–16(a) (West 2000).[5] This exemption also generally extends to the land on which the exempt building is situated, as well as the personal property that is contained therein. *See* A.I.C. § 6–1.1–10–16(c), (e).

Generally, "[h]ospitals maintained, not for pecuniary profit, but to relieve the destitute and deserving, are [ ] classed as [ ] charit[able]." *Indianapolis Osteopathic Hosp.*, 818 N.E.2d at 1015 (citation omitted). It is important to note, however, that if an exempt hospital owns other property, that other property does not automatically receive a charitable purposes exemption. Indeed, the charitable purposes exemption will not apply to other property owned by an exempt hospital unless the other property is "substantially related to or supportive of *the inpatient facility* of the hospital."[6] A.I.C. § 6–1.1–10–16(h) (emphasis added) (footnote add-

ed). Thus, in this case, the Court must determine whether Methodist has made a prima facie case that its other properties, the PCAs, were substantially related to or supportive of Methodist's inpatient facilities. In making this determination, the Court must first ascertain: a) what is a hospital's inpatient facility; and b) what does it mean to be "substantially related to or supportive of" a hospital's inpatient facility?

The intent of the legislature embodied in a statute constitutes the law. *Johnson County Farm Bureau Coop. Ass'n, v. Dept' of State Revenue*, 568 N.E.2d 578, 580 (Ind. Tax Ct.1991), *aff'd*, 585 N.E.2d 1336 (Ind.1992) (citations omitted). "Words and phrases shall be taken in their plain, or ordinary and usual, sense[, b]ut technical words and phrases having a peculiar and appropriate meaning in law shall be understood according to their technical import." *Id.* at 581 (citation omitted). "It is axiomatic in Indiana that the plain, ordinary, and usual meaning of non-technical words in a statute is defined by their ordinary and accepted dictionary meaning." *Id.*

Although there is no definition of either "hospital" or "inpatient facility" in Indiana's property tax statutes, it is clear from the language used in Indiana Code § 6–1.1–10–16(h) that an inpatient facility

---

(*See* Cert. Admin. R. at i.) Therefore, Methodist timely filed the administrative record and the PTABOA's claim fails.

5. The Court presumes that pursuant to Indiana Code § 6–1.1–10–16(a), Methodist's acute care hospitals are exempt from property taxation. (*See* Cert. Admin. R. at 5, 58, 110, 163.) The Court also notes that as of January 1, 2001, property owned by an Indiana non-profit corporation that is used in the operation of a hospital is exempt from property taxation. *See* IND.CODE ANN. § 6–1.1–10–18.5(b) (West 2001) (as amended by P.L. 198 § 29).

6. Other property owned by a hospital may also qualify for a charitable purposes exemption under Indiana Code § 6–1.1–10–16(h) if the property "provides or supports the provision of charity care ... or ... community benefits[.]" *See* IND.CODE ANN. § 6–1.1–10–16(h)(1), (2) (West 2000). Methodist concedes that it is "not pursuing these alternative ground[s] ... for obtaining tax exempt status for the [PCAs]." (*See* Pet'r Reply Br. at 9.) (*See also* Oral Argument Tr. at 31–32.)

is not an entire hospital, but only a portion of a hospital. *See* A.I.C. § 6–1.1–10–16(h). Furthermore, Webster's Dictionary defines "inpatient" as "a patient in a hospital[7] or infirmary who receives lodging and food as well as treatment[.]" WEBSTER'S THIRD NEW INT'L DICTIONARY 1167 (2002 edition) (footnote added). *See also* AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (4th ed.2000), *available at* http://www.bartleby.com (requiring that an inpatient be admitted for "at least one overnight stay"). A "facility" is defined as "something . . . that is built, constructed, installed or established to perform some particular function or to serve or facilitate some particular end[.]" WEBSTER'S DICTIONARY at 812–13. Therefore, a hospital's inpatient facility is that portion of a hospital where admitted patients are provided overnight accommodations, meals, and medical treatment.

■ Similarly, neither Indiana's property tax statutes, nor its case law, define what it means to be "substantially related to or supportive of" a hospital's inpatient facility. Nevertheless, using the aforementioned rules of statutory construction, the Court holds that the phrase means that the other property is associated, to a considerable degree, to a hospital's inpatient facility *or* that the other property provides considerable aid to, or promotes to a considerable degree, the interests of a hospital's inpatient facility. *See* WEBSTER'S DICTIONARY at 1916, 2280, 2297; AMERICAN HERITAGE DICTIONARY, (defining "substantial," "related," and "support").

■ The Court now turns to Methodist's arguments. Methodist asserts that the PCA medical offices are entitled to a charitable purposes exemption for three reasons: (1) because it uses the PCAs to provide traditional medical services, (2) because the PCAs provide medical services as a part of Methodist's "overall continuum of care[,]" and (3) because the PCA physicians do not use the offices "for personal gain." (*See* Cert. Admin. R. at 465–66; Oral Argument Tr. at 11; Pet'r Br. at 7–9, 12–14.) In this case, however, the Court is not persuaded that such assertions satisfy the statutory criteria for a charitable purposes exemption.

Evidence indicating that Methodist employs those who work at the PCAs, bills PCA patients, and performs other banking and administrative functions on behalf of the PCAs merely demonstrates that *Methodist* provides administrative support to the PCAs. The evidence, however, does not show what the relationship is between the PCAs and Methodist's *inpatient facility,* nor does it suggest how the PCAs promote the overall interests of Methodist's *inpatient facility.* Similarly, the Court notes that although the PCAs provide services that may support Methodist's overall continuum of care (i.e., by providing medical services to individuals from "[a]ll over the entire region" and admitting PCA patients into Methodist's hospitals), merely demonstrating that such services are offered, without more, does not clarify how the PCAs are "substantially related to or supportive of" Methodist's inpatient facilities. (*See* Cert. Admin. R. at 484–85.) In other words, this Court will not presume that a substantial relationship or supportive network arises merely because two entities are engaged in the same type of business

---

7. Indiana Code § 6–1.1–10–16(h) refers to a hospital that is licensed under Indiana Code § 16–21. *See* A.I.C. § 6–1.1–10–16(h). For purposes of Indiana Code § 16–21, a "hospital" is "an institution, a place, a building, or an agency that holds out to the general public that it is operated for hospital purposes and that it provides care, accommodations, facilities, and equipment, in connection with the services of a physician, to individuals who may need medical or surgical services." IND. CODE ANN. § 16–18–2–179(b) (West 2000).

activity. Finally, the fact that PCA physicians do not use the offices for personal gain again does little to expose what relationship or degree of support exists between the PCAs and Methodist's inpatient facilities.

To the extent that PCA physicians have provided medical care to Methodist's inpatients, Methodist has shown that *some* relationship or degree of support exists between the PCAs and Methodist's inpatient facilities. Nevertheless, because the administrative record also reveals that PCA physicians have provided medical care, substantially, to the general public, it does not indicate that the PCAs were *substantially* related to or supportive of Methodist's inpatient facilities (i.e., substantially used to provide medical care to Methodist's inpatients). To that end, the Court concludes that the totality of the evidence presented by Methodist does not prima facie establish that the PCAs are "substantially related to or supportive of" Methodist's inpatient facilities. Accordingly, the PCAs are not entitled to a charitable purposes exemption.

## CONCLUSION

For the above stated reasons, the final determination of the Indiana Board is AFFIRMED.