**JAMESTOWN HOMES OF MISHAWAKA, INC.,**
Petitioner,

v.

**ST. JOSEPH COUNTY ASSESSOR,**
Respondent.

No. 49T10–0802–TA–17.

Tax Court of Indiana.

July 24, 2009.

James W. Beatty, Jessica L. Findley, Landman & Beatty, Indianapolis, IN, Attorneys for Petitioner.

Gregory F. Zoeller, Attorney General of Indiana, Jessica E. Reagan, Deputy Attorney General, Indianapolis, IN, Attorneys for Respondent.

FISHER, J.

Jamestown Homes of Mishawaka, Inc. (Jamestown) appeals the final determination of the Indiana Board of Tax Review (Indiana Board) which denied it a property tax exemption for the 2005 tax year (the year at issue). The question before the Court is whether the Indiana Board erred when it determined that Jamestown's apartment complex did not qualify for the charitable purposes exemption provided in Indiana Code § 6–1.1–10–16.

## FACTS AND PROCEDURAL HISTORY

Jamestown, an Indiana not-for-profit corporation, was formed in 1965. Pursuant to its articles of incorporation, its stated purpose is "[t]o provide housing on a mutual ownership basis, in the manner and for the purpose provided in Section 221(d)(3) of Title II of the National Housing Act, as amended." (Cert. Admin. R. at 321.)

Under the Section 221(d)(3) program, the federal government insured and subsidized low-interest rate loans to private developers in order to promote the construction of affordable housing for low to moderate-income families.[1] Through its participation in this program, Jamestown was able to finance the construction of a 160–unit, multi-family apartment complex in Mishawaka, Indiana with a 40–year loan bearing an annual interest rate of only three percent.[2] In exchange for the government's mortgage insurance and interest subsidy, however, Jamestown agreed to be subject to several restrictions. First, it agreed to rent its apartments only to those individuals whose annual income was at or below 95% of the area median income (adjusted for family size) as established by the U.S. Department of Housing and Urban Development (HUD).[3] Second, Jamestown agreed to charge "budget-based" rents; in other words, Jamestown's rents were fixed at rates that would allow it to cover the property's operating costs and debt service only.[4] (*See* Cert. Admin. R. at 160,

---

1. The Section 221(d)(3) program is no longer offered on new mortgage loans; nevertheless, many properties initially constructed under the program still operate within the program's terms.

2. Jamestown apparently completed construction of its apartment complex sometime in 1969 or 1970. (*See* Cert. Admin. R. at 363–86.) At that time, market interest rates were approximately seven and a half percent. (Oral Argument Tr. at 6.)

3. In 2005, the median income levels for the South Bend area, as established by HUD, were $38,150 for a single person, $49,050 for a family of three, and $58,850 for a family of five. (*See* Cert. Admin. R. at 142.)

4. It appears that in estimating its property's annual operating costs, Jamestown included

164–65, 388 (footnote added).) Despite these restrictions, Jamestown retained several "typical" landlord rights: it could evict tenants who failed to pay their rent, it charged fees for late rental payments or returned checks, and it charged security deposits. (*See* Cert. Admin. R. at 418 ¶ 5.)

On April 27, 2005, Jamestown filed two Applications For Property Tax Exemption (Forms 136), claiming that its land, improvements, and the personal property contained therein were entitled to the charitable purposes exemption provided by Indiana Code § 6–1.1–10–16.[5,6] The PTABOA denied the applications. Jamestown subsequently appealed to the Indiana Board.

The Indiana Board conducted a hearing on Jamestown's appeal on July 27, 2006. During the hearing, Jamestown argued that its property was entitled to the exemption because the provision of "safe, decent and affordable housing for persons of lower income who could not otherwise afford such housing" is a charitable purpose. (*See* Cert. Admin. R. at 106, 835–36.) As a part of its presentation, Jamestown submitted, *inter alia,* evidence demonstrating that its rents were below market rents charged in the area for comparable units.[7] (*See* Cert. Admin. R. at 169–96, 845–47 (footnote added).)

On January 7, 2008, the Indiana Board issued a final determination affirming the PTABOA's denial of the exemption. In its final determination, the Indiana Board found that while Jamestown rented its apartments to low and moderate-income tenants at below market rents, it was not because of any charitable purpose or intent of its own; rather, it did so as a condition of its agreement with the federal government. (Cert. Admin. R. at 218–19 ¶¶ 40–41.) Moreover, the Indiana Board found that through its mortgage insurance/interest subsidy, it was the federal government who was "shouldering" the financial burden of providing the low-cost housing. (*See* Cert. Admin. R. at 218–19 ¶¶ 40–42.) As a result, the Indiana Board held that Jamestown had not relieved the government of any burden sufficient to shift Jamestown's property tax liability to the taxpayers.[8] (*See* Cert. Admin. R. at 218–19 ¶¶ 40, 42; 221 ¶ 46 (footnote added).)

On February 19, 2008, Jamestown initiated an original tax appeal. The Court heard the parties' oral arguments on August 21, 2008. Additional facts will be supplied as necessary.

---

its property tax liabilities. (*See* Cert. Admin. R. at 388 ¶ 4.)

5. Jamestown never applied for a charitable purposes exemption prior to 2005. (*See* Oral Argument Tr. at 15–16.)

6. Section 501(c)(3) of the Internal Revenue Code exempts from federal income taxation those organizations organized and operated exclusively for charitable purposes. Jamestown does not have 501(c)(3) status.

7. As Jamestown explained, the lower debt service made possible by the government's mortgage insurance/interest subsidy enabled it to charge below market rents. (*See* Cert. Admin. R. at 160.) In other words, "[t]he rent is lower *solely* because the debt service is

lower." (Oral Argument Tr. at 11 (emphasis added).)

8. In its final determination, the Indiana Board also stated that to the extent that the tax exempt status of low-income housing is specifically addressed in Indiana Code § 6–1.1–10–16.7, taxpayers like Jamestown should not be allowed to "side-step" that statute's requirements by claiming exemption under the broader provision in Indiana Code § 6–1.1–10–16. (*See* Cert. Admin. R. at 220 ¶¶ 43–44.) (*See also* Resp't Br. at 10–13.) Given the Court's holding in this case (i.e., that Jamestown's property does not qualify for the exemption under Indiana Code § 6–1.1–10–16), however, the Court need not address the Indiana Board's dicta.

## ANALYSIS AND OPINION

### Standard of Review

This Court will overturn an Indiana Board final determination only when it is:

(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(2) contrary to constitutional right, power, privilege, or immunity;

(3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory jurisdiction, authority, or limitations;

(4) without observance of procedure required by law; or

(5) unsupported by substantial or reliable evidence.

IND.CODE ANN. § 33–26–6–6(e)(1)–(5) (West 2009). When reviewing Indiana Board final determinations, the Court will defer to the Indiana Board's factual findings as long as they are supported by substantial evidence. *Cedar Lake Conference Ass'n v. Lake County Prop. Tax Assessment Bd. of Appeals,* 887 N.E.2d 205, 207 (Ind. Tax Ct.2008) (footnote and citation omitted), *review denied.* The Court, however, will review questions of law arising from the Indiana Board's factual findings *de novo. Id.* (citations omitted).

### Discussion

■ In Indiana, "[a]ll or part of a building is exempt from property taxation if it is owned, occupied, and [predominantly] used [for] . . . charitable purposes." IND. CODE ANN. § 6–1.1–10–16(a) (West 2009). *See also* IND.CODE ANN. § 6–1.1–10–36.3(a) (West 2009) (defining predominant use as more than 50% of the time). The exemption also generally extends to the land on which the exempt building is situated, as well as the personal property that is contained therein. *See* A.I.C. § 6–1.1–10–16(c), (e).

■ Exemptions are strictly construed against the taxpayer and in favor of the State. *Indianapolis Osteopathic Hosp., Inc. v. Dep't of Local Gov't Fin.,* 818 N.E.2d 1009, 1014 (Ind. Tax Ct.2004), *review denied.* This is so because "[a]n exemption releases property from the obligation of bearing its fair share of the cost of government and serves to disturb the equality and distribution of the common burden of government upon all property." *Id.* Accordingly, a taxpayer always bears the burden of proving that its property is entitled to the exemption it seeks. *State Bd. of Tax Comm'rs v. New Castle Lodge # 147, Loyal Order of Moose, Inc.,* 765 N.E.2d 1257, 1259 (Ind.2002).

■ In order to show that property is *used* for a charitable purpose, a taxpayer must demonstrate two things. First, it must show that through its use, there is "evidence of relief of human want . . . manifested by obviously charitable acts different from the everyday purposes and activities of man in general." *Indianapolis Elks Bldg. Corp. v. State Bd. of Tax Comm'rs,* 145 Ind.App. 522, 251 N.E.2d 673, 683 (1969). Second, the taxpayer must show that through the accomplishment of those charitable acts, a benefit inures to the public sufficient to justify the loss of tax revenue. *Foursquare Tabernacle Church of God in Christ v. State Bd. of Tax Comm'rs,* 550 N.E.2d 850, 854 (Ind. Tax Ct.1990) (internal citation omitted). Thus, as this Court has previously explained, when a private organization uses its property to perform charitable acts that relieve the government of its obligations, an exemption is proper: "when a private organization takes on a task that would otherwise fall to the government, this provides a benefit to the community as a whole because it allows the government to direct its funds and attention to other community needs." *College Corner, L.P. v. Dep't of Local Gov't Fin.,* 840 N.E.2d 905, 910 (Ind. Tax Ct.2006).

On appeal, Jamestown argues that it has unequivocally met this burden. More specifically, it explains:

> Both the United States National Housing Act of 1937 and the Housing and Urban Development Act of 1968 note the shortage of affordable housing to low-income individuals. Clearly, Jamestown's provision of affordable housing to moderate and low-income individuals helps to alleviate this shortage and relieves [their] want of having a safe and clean place to live. In addition, Jamestown's provision of low-income housing is a charitable act that is different from the everyday purposes and activities of man in general because it provides affordable housing ... with no expectation of financial gain and [it] agrees to comply with numerous regulations prescribed by HUD[.]

(Pet'r Br. at 18.) Finally, Jamestown maintains that it "is performing a service, providing housing to low-income individuals, that if it did not otherwise do [ ], the federal government, and state and local government, would have an obligation to [do].... Jamestown's undertaking of [this service] has helped [the] government meet its assumed obligation." (Pet'r Br. at 22.) As a result, Jamestown maintains that the Indiana Board erred when it determined that its property did not qualify for the charitable purposes exemption. The Court, however, disagrees.

The issue in this case—whether housing, owned by a not-for-profit corporation who receives governmental subsidies so that it may rent to moderate/low-income individuals at below market rates, is property used for a charitable purpose—is one of first impression in this state.[9] As both Jamestown and the Indiana Board have pointed out, however, other jurisdictions across the country have weighed in on similar issues.[10] While the holdings from other ju-

---

**9.** Jamestown claims that this Court has already ruled that the provision of affordable housing for low-income persons constitutes a charitable purpose. (*See* Pet'r Br. at 18.) To support its claim, it cites to a footnote in *College Corner, L.P. v. Department of Local Government Finance*, 840 N.E.2d 905 (Ind. Tax Ct.2006), which states:

> if [petitioner's] redevelopment efforts were aimed at providing housing for low-income families and individuals, such efforts would provide relief of human want. *See* IND.CODE ANN. § 6–1.1–10–16(1) (West 2000) (providing that property is exempt from taxation if acquired for the purpose of erecting, renovating, or improving a single-family residential structure that is to be given away or sold by a nonprofit organization to low-income individuals.)

(Pet'r Br. at 18 (citing *College Corner, L.P. v. Dep't of Local Gov't Fin.*, 840 N.E.2d 905, 909 n. 8 (Ind. Tax Ct.2006).)) Jamestown, however, reads that footnote too broadly.

First, while the Court stated that the provision of low-income housing relieves human want, it did not say that the provision of such housing rises to the level necessary for an exemption, nor did it say that through the provision of such housing, a benefit inured to the public sufficient to justify the loss of tax revenue. *Cf. with Indianapolis Elks Bldg. Corp. v. State Bd. of Tax Com'rs*, 145 Ind.App. 522, 251 N.E.2d 673, 682 (1969) (finding that taxpayer's facilities and activities suppressed human want and suffering, but not to the degree required to qualify for a tax exemption); *Foursquare Tabernacle Church of God in Christ v. State Bd. of Tax Com'rs*, 550 N.E.2d 850, 854 (Ind. Tax Ct.1990). Secondly, the Court limited the application of its statement to the fact scenario presented in Indiana Code § 6–1.1–10–16(i). The fact scenario exempt under Indiana Code § 6–1.1–10–16(i) is not the fact scenario presented in this case.

**10.** The majority of those cases cited support the Indiana Board's final determination. *See, e.g., Waterbury First Church Hous., Inc. v. Brown*, 170 Conn. 556, 367 A.2d 1386 (1976) (non-profit housing corporation that rented apartments to the elderly at below market rates was not a "charitable organization" because it did not achieve its charitable purpose through use of its own charitable funds, but

risdictions are not binding on this Court, it finds the holding in one case particularly instructive and persuasive because it is based on a factual situation and exemption provision similar to what is at issue in this case. *See USAir, Inc. v. Indiana Dep't of State Revenue,* 623 N.E.2d 466, 469 n. 4 (Ind. Tax Ct.1993).

In 1967, the Supreme Court of New Mexico was called upon to decide whether property, used by a nonprofit corporation to provide low rent apartments to low-income families, was used for charitable purposes. *See Mountain View Homes, Inc. v. State Tax Comm'n,* 77 N.M. 649, 427 P.2d 13 (1967). As in this case, the apartments were financed and administered under the Section 221(d)(3) program; thus, the maximum income for tenants occupying the apartments was regulated and controlled under the provisions of the program. *Id.* at 14.

In its analysis, the court explained the legal framework by which it was to analyze the facts of the case. First, it explained that New Mexico's charitable purposes exemption provided that:

[t]he property of the United States, the state and all counties, towns, cities and school districts, and other municipal corporations, public libraries, community ditches and all laterals thereof, all church property, all property used for education or charitable purposes ... shall be exempt from taxation.

*Id.* (quoting N.M. CONST., art. VIII, § 3). *Cf. with* A.I.C. § 6–1.1–10–16(a). Second, it explained that under New Mexico law, the concept of "charity" was to be construed broadly, but not so broadly as to result in an absurdity. *Id.* at 15–16. *Cf. with Indianapolis Elks,* 251 N.E.2d at 682 (stating that in Indiana, "charity" is to be given the broadest meaning constitutionally possible). Finally, the court explained that the determinative factor in deciding whether a charitable purposes exemption was proper was use of property, not its ownership. *See Mountain View Homes,* 427 P.2d at 15. *Cf. with State ex rel. Tieman v. City of Indianapolis,* 69 Ind. 375, 377 (1879) (stating that Article X, § 1 of the Indiana Constitution clearly "contemplates the character and purpose of the property that may be exempted from taxation, not the character and purpose of the owner of the property"). Then, in holding that the apartments were not eligible for

---

rather from government subsidies); *Housing Sw., Inc. v. Washington County,* 128 Idaho 335, 913 P.2d 68 (1996) (non-profit housing corporation's provision of housing to the elderly and disabled at below market rates did not perform a function which might otherwise be an obligation of government because the housing was supported by federal tax dollars and not private donations); *P'ship for Affordable Hous. v. Bd. of Review,* 550 N.W.2d 161 (Iowa 1996) (low-income housing was not a charitable use of property because owner provided residents with nothing more than housing partly subsidized by the government and did not make concessions for tenants who were unable to pay their rents); *Supervisor of Assessments v. Har Sinai W. Corp.,* 95 Md. App. 631, 622 A.2d 786 (1993) (nonprofit corporation's purpose in providing low income housing was not charitable because it did not provide any services other than housing, and

subsidies were provided by federal government rather than taxpayer itself); *Better Living Serv., Inc. v. Bolivar County,* 587 So.2d 914 (Miss.1991) (nonprofit corporation operating low cost apartments was not a "charitable society" entitled to exemption when it received all of its income through government subsidies and tenant rents); *Pittman v. Sarpy County Bd. of Equalization,* 258 Neb. 390, 603 N.W.2d 447 (1999) (stating that low-income housing is not a charitable use of property). *But see Banahan v. Presbyterian Hous. Corp.,* 553 S.W.2d 48 (Ky.1977) (housing provided to the elderly and handicapped for below market rates by "institutions of purely public charity" was employed for a purely charitable purpose); *In re Rio Vista Non–Profit Hous. Corp. v. County of Ramsey,* 277 N.W.2d 187 (Minn.1979) (housing for low and moderate income families furthers a charitable objective and lessens the burdens of government).

New Mexico's charitable purposes exemption, the court stated:

> It seems apparent to us that almost any activity which is not undertaken for profit and which has beneficial aspects concerning certain segments of our society may readily be classed as "charitable" ... Conceivably, this could include a banking business, manufacturing business, or any other commercial enterprise, the proceeds from which are used to promote and advance the well-being of man. It is our firm conviction that no such all-embracing application of the term was contemplated by the drafters of our constitution. We would submit that property used in an operation such as [the plaintiff's] would not have been considered charitable when our constitution was adopted. T[ru]e, no one makes a pecuniary profit, and certain persons and families who may be described as "low-income[ ]" ... are provided better housing at lower prices than would otherwise be available to them. A benefit is thus bestowed. However, the recipients are certainly in no sense sick or indigent, and we would venture that most would be surprised to learn that they are considered as being proper objects for, or as recipients of charity. There is nothing in the record which indicates that any are welfare clients, or are permitted to occupy apartments without payment of the established rental. Neither is there any element of fraternity, brotherhood or good fellowship intended to improve the spirits or impel to renewed effort. It is clear that rents are fixed at an amount necessary to pay the interest, amortize the principal and pay all expenses of maintaining the property.... Here, we have an enterprise to furnish low-cost housing to a certain segment of our population. It was intended to be self-supporting, without any thought that gifts or charity were involved. The tenants are required to pay for the premises occupied by them with the rentals being fixed so as to return the amount estimated as being necessary to pay out the project. It is competitive with landlords offering other residential property for rent and on which taxes must be paid. Also ... there [i]s no evidence that the public is relieved of any expense in comparison with the loss of tax revenue. We conclude the use is not charitable so as to exempt the property from taxes[.]

*Mountain View Homes*, 427 P.2d at 17.

This Court adopts, as its own, the reasoning provided in the New Mexico case. Indeed, the administrative record in this case merely reveals that Jamestown rents its apartments to moderate and low-income individuals for below market rates. There is no evidence, however, indicating that there are any welfare clients in Jamestown's apartments, nor is there any evidence indicating that Jamestown's tenants are permitted to occupy their apartments when they are unable to pay their rent. Likewise, there is no evidence in the administrative record indicating that Jamestown provides an "element of fraternity, brotherhood, or good fellowship intended to improve the spirits or impel to renewed effort," whether it be through, for example, free services for, or counseling of, its tenants. Finally, there is no evidence in the administrative record demonstrating that Jamestown has lessened the burden of government in meeting the need for affordable housing because that need is ultimately being met by the government through its mortgage insurance and interest subsidy. As a result, the Indiana Board did not err when it determined that Jamestown's apartment complex did not qualify for the charitable purposes exemption.[11]

---

**11.** On a final note, Jamestown claims that prior to its final determination in this case,

the Indiana Board consistently held that the

## CONCLUSION

For the foregoing reasons, the Indiana Board's final determination in this matter is AFFIRMED.

provision of federally assisted, low-income housing is a charitable purpose. (*See* Pet'r Br. at 10–11, 18–19.) (*See also* Pet'r Notice of Authority filed Oct. 14, 2008.) To the extent the Indiana Board "suddenly reversed course[, it] is not entitled to ignore its prior decisions." (Pet'r Br. at 19.) Given the Court's ruling in this case, however, Jamestown's claim is moot.