**JAMESTOWN HOMES OF MISHAWAKA, INC.,**
Petitioner,

v.

**ST. JOSEPH COUNTY ASSESSOR,**
Respondent.

No. 49T10–0802–TA–17.

Tax Court of Indiana.

Sept. 30, 2009.

---

James W. Beatty, James F. Beatty, Jessica L. Findley, Landman & Beatty, Indianapolis, IN, Attorneys for Petitioner.

Gregory F. Zoeller, Attorney General of Indiana, Jessica E. Reagan, Deputy Attorney General, Indianapolis, IN, Attorneys for Respondent.

## ORDER ON PETITIONER'S PETITION FOR REHEARING

FISHER, J.

On July 24, 2009, this Court issued an opinion in the above-captioned case. In that opinion, the Court affirmed the Indiana Board of Tax Review's (Indiana Board) final determination that held that Jamestown Homes of Mishawaka, Inc. (Jamestown) was not entitled to a property tax exemption on apartments it leased to low/moderate income individuals for below-market rent. *See Jamestown Homes of Mishawaka, Inc. v. St. Joseph County Assessor*, 909 N.E.2d 1138 (Ind. Tax Ct.2009). On August 21, 2009, Jamestown filed a Petition for Rehearing (Petition), pursuant to Indiana Appellate Rule 63, requesting the Court reconsider its holding.

## ANALYSIS & ORDER

In its Petition, Jamestown maintains that the Court must reconsider its holding in *Jamestown* for two reasons. First, it argues that the *Jamestown* decision conflicts with the Court's decision in *Oaken Bucket Partners, LLC v. Hamilton County Property Tax Assessment Board of Appeals*, 909 N.E.2d 1129 (Ind. Tax Ct.2009). (Pet'r Pet. Reh'g at 4–5.) Second, it argues that in denying it an exemption, the Court both "committed error and created a new burden of proof." (Pet'r Pet. Reh'g at 5–8.)

1.

On the same day the Court issued its decision in *Jamestown*, it also issued a decision in the aforementioned *Oaken Bucket* case. In *Oaken Bucket*, the Court held that the petitioner was entitled to an exemption on property it leased to a church for below-market rent. *See Oaken Bucket Partners, LLC v. Hamilton County Prop. Tax Assessment Bd. of Appeals*, 909 N.E.2d 1129 (Ind. Tax Ct.2009). Jamestown now argues that the holding in its case is "irreconcilable and totally inapposite" with the holding in *Oaken Bucket* and must therefore be reversed: Oaken Bucket leased its property for below-market rent and got an exemption, while Jamestown leased its property for below-market rent and did not get an exemption. (*See* Pet'r Pet. Reh'g at 4–5.)

"All or part of a building is exempt from property taxation if it is owned, occupied, and [predominately] used ... for ... religious[ ] or charitable purposes." IND. CODE ANN. §§ 6–1.1–10–16(a), –36.3(a) (West 2005). Therefore, in order to show entitlement to an exemption, the taxpayer must present probative evidence during the Indiana Board hearing which demonstrates that its property is owned for exempt purposes, occupied for exempt purposes, and predominately used for exempt purposes. *See Sangralea Boys Fund, Inc. v. State Bd. of Tax Comm'rs*, 686 N.E.2d 954, 959 (Ind. Tax Ct.1997), *review denied.* "Once these three elements have been met, regardless of by whom, the property can be exempt from taxation." *Id.*

In *Oaken Bucket*, there was no question that the subject property was occupied and used for religious (i.e., exempt) purposes. *Oaken Bucket*, 909 N.E.2d at

1132 n. 4, 1137. As a result, the only question that had to be answered was whether Oaken Bucket owned the property for an exempt purpose. The Court determined that because it leased the space for below-market rents, Oaken Bucket owned the property for a charitable (also exempt) purpose. *Id.* at 1137–38. In *Jamestown,* however, the question was whether the subject property was used for an exempt purpose. *See Jamestown,* 909 N.E.2d at 1142. In reviewing the administrative record in that case, the Court determined that Jamestown had not demonstrated that its federally-subsidized, low-income housing was property used for a charitable purpose. *See id.* at 1144. *See also infra* n. 3.

██ "The evaluation of whether property is owned, occupied, and predominately used for an exempt purpose is a fact sensitive inquiry; there are no bright-line tests." *Oaken Bucket,* 909 N.E.2d at 1134 (citation omitted). Thus, each and every exemption case "stand[s] on its own facts" and, ultimately, how the parties present those facts. *See Indianapolis Osteopathic Hosp., Inc. v. Dep't of Local Gov't Fin.,* 818 N.E.2d 1009, 1018 (Ind. Tax Ct.2004), *review denied; Long v. Wayne Twp. Assessor,* 821 N.E.2d 466, 471 (Ind. Tax Ct.2005) (explaining that a taxpayer has a duty to walk the Indiana Board through every element of its analysis; it cannot assume the evidence speaks for itself), *review denied.*

The determination that Oaken Bucket's property was entitled to an exemption was based on all the facts as they were presented in that case. The determination that Jamestown's property was not entitled to an exemption was based on all the facts as Jamestown presented them. To the extent the facts in these cases are not identical, their respective outcomes are not irreconcilable.

2.

Jamestown complains that in denying its property the tax exemption, "[t]he Indiana Board found [that it had been] the recipient of 'local government subsidies.' However, there [wa]s no evidence in the record, substantial, reliable or otherwise, that this [wa]s in fact the case." (Pet'r Pet. Reh'g at 6.) As a result, Jamestown asserts that in affirming the Indiana Board's final determination, the Court "has committed error in its implicit finding that there are no genuine issues of material fact."[1] (Pet'r Pet. Reh'g at 5 (footnote added).) Jamestown asks the Court to therefore remand the case to the Indiana Board "for further hearing to enable evidence to be heard as to this (and perhaps other) genuine issue[s] of material fact." (Pet'r Pet. Reh'g at 7.)

Jamestown admitted that it received a *federal* subsidy to construct its apartment complex. (*See* Pet'r Br. at 13.) Indeed, it received a loan which the federal government insured and on which it "absorbed" the difference between the market interest rate of 7.5% and the 3% interest rate Jamestown received. (*See, e.g.,* Oral Argument Tr. at 6.) Jamestown further explained that it was only because of this federal subsidy, which lowered its debt service, that it was able to charge below-market rents. *See Jamestown,* 909 N.E.2d at 1140 n. 7.

By "local government subsidies," the Court is unsure to what Jamestown is referring. It matters not, however, because in rendering its decision, the Court considered the federal subsidy only. *See*

---

1. At the administrative hearing in this case, both Jamestown and the St. Joseph County Assessor had moved for summary judgment.

*id.* at 1139–45. Thus, the Court committed no error.

Finally, Jamestown argues that the Court strayed from applying the well-established test for determining whether property qualifies for a charitable purposes exemption and applied a whole "new" test. (Pet'r Pet. Reh'g at 7.) Jamestown therefore claims that it is entitled to another administrative hearing so that it may have an opportunity to submit evidence which may demonstrate that it has met this new test. (*See* Pet'r Pet. Reh'g at 8.) (*See also* Pet'r Pet. Reh'g at 5 (explaining that because it could not have known at the time of its administrative hearing that the Court was going to change the test, it could not have anticipated what evidence it needed to offer in order to make a prima facie case).)

■ The Court did not apply a new test. *See Jamestown,* 909 N.E.2d at 1141 (stating that Jamestown was required to demonstrate that it used its property to relieve human want through charitable acts different from the everyday purposes and activities of man in general and that, through the accomplishment of those acts, a benefit inured to the public sufficient to justify the loss of tax revenue) (citations omitted). Rather, what Jamestown construes as the "new" test is actually the Court explaining

to Jamestown that in order to meet its burden of proof, it needed to do more than make statements like "[the provision of] safe, clean, and affordable housing to low-income persons at below-market rents ... is [property] owned, used and occupied for the quintessential charitable purpose of providing affordable housing to low-income persons" and "Jamestown's provision of affordable housing to moderate and low-income individuals ... is a charitable act ... because [as a not-for-profit, Jamestown has] ... no expectation of financial gain and [it] agrees to comply with numerous regulations prescribed by HUD." [2] (*See, e.g.,* Pet'r Br. at 10, 18 (footnote added).)

## CONCLUSION

In a case where the question to be answered was whether low-income housing was property used for a charitable purpose, Jamestown did little more than state that the provision of low-income housing is a charitable purpose.[3] Consequently, the Court DENIES Jamestown's Petition.

2. It is a well-established rule, however, that a corporation's not-for-profit status does not automatically qualify it for a charitable purposes exemption under Indiana Code § 6-1.1–10–16; rather, the corporation must show that its property *is actually used for a charitable purpose. Lincoln Hills Dev. Corp. v. State Bd. of Tax Comm'rs,* 521 N.E.2d 1360, 1361 (Ind. Tax Ct.1988).

3. In presenting its case, Jamestown operated under the belief that this Court had already

ruled that the provision of affordable housing for low-income persons was property used for a charitable purpose. *See Jamestown Homes of Mishawaka, Inc. v. St. Joseph Co. Assessor,* 909 N.E.2d 1138, 1142 n. 9 (Ind. Tax Ct.2009). As this Court pointed out, however, it never made such a ruling. *See id.*