**HOUSING PARTNERSHIPS, INC., Petitioner,**

v.

**Tom OWENS, Bartholomew County Assessor, Respondent.**

No. 49T10–1005–TA–23.

Tax Court of Indiana.

June 6, 2014.

Sandra K. Bickel, Morse & Bickel P.C., Indianapolis, IN, Attorney for Petitioner.

Gregory F. Zoeller, Attorney General of Indiana, Jessica E. Reagan, Deputy Attorney General, Indianapolis, IN, Attorneys for Respondent.

Paul M. Jones, Jr., Màtthew J. Ehinger, Indiana Association for Community Economic Development, Inc., Indianapolis, IN, Attorneys for Amicus Curiae.

WENTWORTH, J.

This case asks the Court to determine whether the Indiana Board of Tax Review erred when it held that for the 2006 tax year, Housing Partnerships, Inc. failed to show that its rental properties qualified for the charitable purposes exemption provided in Indiana Code § 6–1.1–10–16. The Court affirms the Indiana Board's holding.

## FACTS AND PROCEDURAL HISTORY

Housing Partnerships, an Indiana corporation, was formed in 1990. Its articles of incorporation state that it "is organized and operated not for profit but exclusively for charitable purposes." (Cert. Admin. R. at 548.) More specifically, Housing Partnerships' stated purpose is "to undertake, promote, develop, and encourage any activity or means to ameliorate the housing needs of disadvantaged persons without regard to race, religion, sex, or national origin; and to that end, to sponsor, support and promote, and to undertake housing projects" in Bartholomew County, Indiana. (Cert. Admin. R. at 548, 566.) In accordance with that stated purpose, Housing Partnerships' objectives are

[ ] To build or cause to be built, and to rehabilitate or cause to be rehabilitated, housing units for persons of low-income or moderate-income ... and to rent or sell such housing units, without profit; to persons and families not otherwise

able to obtain housing that is decent, safe and sanitary[; and]

\*   \*   \*   \*   \*   \*

[ ] To determine and investigate standards of housing; to foster any means for finding more efficient means of housing production which reduce the costs of housing for disadvantaged persons; to make available to the public general information relating to the conditions in which disadvantaged persons are compelled to live; and to promote within the community such goals as may complement the activities of [Housing Partnerships].

(Cert. Admin. R. at 548.) Housing Partnerships funds its housing projects by using money from several different sources: the income it receives from both the sale and the rental of its housing units, donations from individuals and businesses, and monies received from various public and private grants. (*See, e.g.,* Cert. Admin. R. at 637, 1251–57, 1268.) In 2005 alone, Housing Partnerships received over $1 million in federal grant money. (*See* Cert. Admin. R. at 637, 1250–59.)

In 2006, Housing Partnerships owned numerous single family homes, duplexes and small apartment buildings in Bartholomew County. Housing Partnerships rented these properties (or the units in them) to individuals whose annual incomes were at or below 60% of the area median income (adjusted for family size).[1]

On February 3, 2006, Housing Partnerships filed an Application For Property Tax Exemption on each of its rental properties and its administrative office (the subject properties). The applications claimed that the subject properties were

---

1. The U.S. Department of Housing and Urban Development (HUD) determines median income levels. (*See* Cert. Admin. R. at 1236–38.) For 2006, the median income levels for Bartholomew County were established at

$25,500 for a single person, $29,160 for a family of two, $32,760 for a family of three, and $36,420 for a family of four. (*See* Cert. Admin. R. at 591, 1237–38.)

entitled to the charitable purposes exemption set forth in Indiana Code § 6–1.1–10–16 because they were used to provide housing to low-income individuals and families. (*See, e.g.*, Cert. Admin. R. at 8–9.) On March 13, 2007, the Bartholomew County Property Tax Board of Appeals (PTABOA) denied the applications.

Housing Partnerships subsequently appealed to the Indiana Board. The Indiana Board conducted a hearing on the appeal on January 30, 2009. On April 6, 2010, the Indiana Board issued a final determination affirming the PTABOA's exemption denial because Housing Partnerships' evidence failed to establish a *prima facie* case that the subject properties were entitled to the charitable purposes exemption. (*See, e.g.*, Cert. Admin. R. at 475 ¶ 35.) The Indiana Board's final determination also stated that to the extent Housing Partnerships had received a substantial amount of money through federal grants, but did not explain what, if any, terms and conditions were attached to that financial support, an exemption was not proper. (Cert. Admin. R. at 476–77 ¶¶ 37–39.)

On May 21, 2010, Housing Partnerships initiated this original tax appeal. The Court heard oral argument on November 15, 2011. Additional facts will be supplied as necessary.

## STANDARD OF REVIEW

■ This Court gives great deference to final determinations of the Indiana Board when it acts within the scope of its authority. *Tipton Cnty. Health Care Found. v. Tipton Cnty. Assessor*, 961 N.E.2d 1048, 1050 (Ind. Tax Ct.2012). Consequently, the Court will overturn an Indiana Board final determination only if it is:

(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(2) contrary to constitutional right, power, privilege, or immunity;

(3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory jurisdiction, authority, or limitations;

(4) without observance of procedure required by law; or

(5) unsupported by substantial or reliable evidence.

IND.CODE § 33–26–6–6(e)(1)–(5) (2014). Housing Partnerships, as the party seeking to overturn the Indiana Board's final determination, bears the burden of establishing its invalidity. *See Osolo Twp. Assessor v. Elkhart Maple Lane Assocs.*, 789 N.E.2d 109, 111 (Ind. Tax Ct.2003).

## LAW

■ The charitable purposes exemption, set forth in Indiana Code § 6–1.1–10–16, provides that "[a]ll or part of a building is exempt from property taxation if it is owned, occupied, and used ... for ... charitable purposes." IND.CODE § 6–1.1–10–16(a) (2006). The exemption also extends to the land on which an exempt building is situated and the personal property that is contained therein. *See* I.C. § 6–1.1–10–16(c), (e). Accordingly, a taxpayer seeking a charitable purposes exemption under Indiana Code § 6–1.1–10–16(a) must demonstrate that it owns, occupies, and predominantly uses its property for charitable purposes. *See 6787 Steelworkers Hall, Inc. v. Scott*, 933 N.E.2d 591, 595 (Ind. Tax Ct.2010); IND.CODE § 6–1.1–10–36.3(a) (2006).

■ Housing Partnerships is entitled to an exemption if it provided the Indiana Board with probative evidence[2] that its

2. "Probative evidence is evidence that tends to prove or disprove a point in issue." *Inland*

ownership, occupation, and use of the subject properties as low-income housing constitute a charitable purpose. Because the provision of low-income housing is not *per se* a charitable purpose, *see Jamestown Homes of Mishawaka, Inc. v. St. Joseph Cnty. Assessor,* 909 N.E.2d 1138, 1144 (Ind. Tax Ct.2009), *review denied,* Housing Partnerships needed to demonstrate two things *at the Indiana Board hearing.* First, it must have shown that its ownership, occupation, and use of the subject properties as low-income housing provided "evidence of relief of human want ... manifested by obviously charitable acts different from the everyday purposes and activities of man in general." *See Indianapolis Elks Bldg. Corp. v. State Bd. of Tax Comm'rs,* 145 Ind.App. 522, 251 N.E.2d 673, 683 (1969). Second, Housing Partnerships must have shown that through the accomplishment of those charitable acts, benefit inures to the public sufficient to justify the loss of tax revenue. *See Foursquare Tabernacle Church of God in Christ v. State Bd. of Tax Comm'rs,* 550 N.E.2d 850, 854 (Ind. Tax Ct.1990). In other words, an exemption is proper "when a private organization takes on a task that would otherwise fall to the government, [as] this provides a benefit to the community as a whole because it allows the government to direct its funds and attention to other community needs." *College Corner, L.P. v. Dep't of Local Gov't Fin.,* 840 N.E.2d 905, 910 (Ind. Tax Ct.2006).

## ANALYSIS

On appeal, Housing Partnerships argues that the Indiana Board's final determination must be overturned for two reasons. First, it claims that the final determination is arbitrary, capricious, and an abuse of

*Steel Co. v. State Bd. of Tax Comm'rs,* 739 N.E.2d 201, 211 (Ind. Tax Ct.2000) (internal

discretion because, in holding as it did, the Indiana Board ignored Housing Partnerships' evidence. Second, it claims that the Indiana Board's final determination is contrary to law.

### I.

Housing Partnerships first claims that in reaching its determination, the Indiana Board abused its discretion by simply ignoring "the overwhelming amount of uncontroverted testimony" by its employees, its tenants, and the executive director of the Columbus Housing Authority. (Pet'r Br. at 16.) Housing Partnerships asserts that this testimony demonstrated that the subject properties were used to provide low-income individuals in the distressed areas of Bartholomew County with "clean, safe and secure housing ... at affordable and below-market rents" and with services and support designed "to assist them in becoming self-sufficient and productive members of the community." (Pet'r Br. at 14.)

During the Indiana Board hearing, Housing Partnerships presented the testimony of Mark Lindenlaub, its president, and Connie Munn, its vice president. Their testimony established that Housing Partnerships had been recognized by the Internal Revenue Service as a 501(c)(3) organization, having met the federal statutory criteria to be exempted from federal income taxation as a charitable organization. (*See* Cert. Admin. R. at 1211–12.) (*See also* Cert. Admin. R. at 551–56.) In addition, their testimony established that because Housing Partnerships received federal grant monies, it was able to charge below-market rental rates for the subject properties. (*See* Cert. Admin. R. at 1252–53, 1262, 1268, 1287–97, 1303–04.) (*See*

quotation and citation omitted), *review denied.*

*also* Cert. Admin. R. at 583–84, 609–26.) Their testimony also established that Housing Partnerships not only pays for its tenants to attend at least one credit counseling session, but it also has offered classes to them on how to purchase a home and make home repairs. (*See* Cert. Admin. R. at 1218–19, 1225–27, 1240–44.) Moreover, Housing Partnerships has written letters of recommendation for its tenants, it has taken them to Alcoholics Anonymous meetings, and it has provided them with referrals to various service organizations. (*See* Cert. Admin. R. at 1272–80, 1300–01, 1317–20.) Finally, through their testimony they explained that Housing Partnerships' building and rehabilitation efforts are directed to the oldest, poorest, and most dilapidated areas in Bartholomew County. (*See* Cert. Admin. R. at 1219, 1227–29.)

Housing Partnerships also presented the affidavits of three of its tenants (two former, one current). (*See* Cert. Admin. R. at 567–82.) All of these affiants described how Housing Partnerships and its employees have made a difference in their lives, whether it was by assisting them in repairing their credit, by giving them confidence to make home repairs, or simply by providing them with encouragement. (*See* Cert. Admin. R. at 567–82.) Finally, Housing Partnerships presented the testimony of Deborah Holt, the Executive Director of the Columbus Housing Authority (CHA) and a member of Housing Partnerships' Board of Directors. (*See* Cert. Admin. R. at 1323, 1327.) Holt testified that in her position with the CHA, she referred many of her Section 8[3] clients to Housing Partnerships because she believed it was the "best" landlord in Columbus. (*See* Cert. Admin. R. at 1327–31.) She further testified that she believed that if Housing Partnerships did not exist, there would be a "huge" number of homeless people in the area because they would not be able to find good, clean, affordable housing. (See Cert. Admin. R. at 1327–31, 1335–41.)

■■ In evaluating all of this testimonial evidence, the Indiana Board explained that it demonstrated that Housing Partnerships was "a good landlord and d[id] some nice things for its tenants," but it did not demonstrate that the subject properties were owned, occupied, and predominately used for a charitable purpose as that term is used in Indiana Code § 6–1.1–10–16. (Cert. Admin. R. at 478 ¶¶ 40–42, 479 ¶ 44.) The Indiana Board's conclusion that a taxpayer must show more than just good deeds and a nonprofit status is supported by this Court's case law. *See generally Methodist Hosps., Inc. v. Lake Cnty. Prop. Tax Assessment Bd. of Appeals,* 862 N.E.2d 335 (Ind. Tax Ct.2007), *review denied; Indianapolis Osteopathic Hosp., Inc. v. Dep't of Local Gov't Fin.,* 818 N.E.2d 1009 (Ind. Tax Ct.2004), *review denied; Nat'l Ass'n of Miniature Enthusiasts v. State Bd. of Tax Comm'rs,* 671 N.E.2d 218 (Ind. Tax Ct.1996); *St. Mary's Med. Ctr. of Evansville, Inc. v. State Bd. of Tax Comm'rs,* 534 N.E.2d 277 (Ind. Tax Ct.1989) (all denying an exemption to a corporation despite its recognized federal or state nonprofit status). Moreover, evidence that a nonprofit corporation charges

---

**3.** Section 8 of the United States Housing Act of 1937 is administered by HUD. *See generally* 42 U.S.C. § 1437 (2005). By participating in this program, landlords generally agree to set aside a number of units for rental to low-income individuals; HUD subsidizes the difference between the rental rates on those units and what the tenants can actually pay.

(*See* Cert. Admin. R. at 1263–64, 1325.) In 2006, 35% of Housing Partnerships' tenants were Section 8. (*See* Cert. Admin. R. at 583–84, 1342.) Housing Partnerships explains that Section 8 vouchers constitute a subsidy to the tenant and not the landlord. (*See* Cert. Admin. R. at 1263–64, 1325.)

low-income individuals below-market rents for its apartments is not enough to show that the property is used for a charitable purpose, even when the nonprofit corporation provides free services to its tenants. *See Jamestown Homes,* 909 N.E.2d at 1144. Indeed, a taxpayer still must provide evidence that it has relieved the government of an expense that it would have otherwise borne. *See id.*

■ Throughout the administrative process and in its presentation to this Court, Housing Partnerships stated that it lessened the government's financial burden because:

1) its building and rehabilitation efforts were directed to the distressed areas in Bartholomew County, relieving the government of its burden to revitalize those areas;

2) it helped people "from falling through the cracks," relieving human want and therefore doing something the government otherwise would have had to do;

3) its rental rates were lower than other housing units, relieving the government (*i.e.,* HUD) of its obligation to subsidize a greater portion of the rents paid by Housing Partnerships' Section 8 tenants;

4) it helped its tenants to become more financially self-sufficient, relieving the government of its burden to support them.

(*See, e.g.,* Cert. Admin. R. at 528–29, 1219, 1227–29, 1337–41; Pet'r Br. at 11; Pet'r Reply Br. at 7 n. 10; Oral Arg. Tr. at 22–23.) These statements, however, are nothing more than mere conclusions. They are not supported by any evidence in the administrative record that, for example, the government actually bore the burden of revitalizing Bartholomew County's distressed areas, or that it bore the burden of "preventing people from falling through the cracks." *See College Corner,* 840 N.E.2d at 910 (referring to a statutory provision that indicated the government bore the burden to provide for neighborhood sidewalks and alleys). Without laying such a foundation, Housing Partnerships' conclusory statements do not constitute probative evidence. *See, e.g., Whitley Prods., Inc. v. State Bd. of Tax Comm'rs,* 704 N.E.2d 1113, 1119 (Ind. Tax Ct.1998) (explaining that allegations, unsupported by factual evidence, remain allegations), *review denied.*

The final determination shows that the Indiana Board did not ignore Housing Partnerships' testimonial evidence. Instead, it shows that the Indiana Board weighed that evidence and concluded that it was not probative because it failed to demonstrate that the subject properties were owned, occupied, and used for a charitable purpose.

## II.

Housing Partnerships also argues that the Indiana Board's final determination is contrary to law. Specifically, Housing Partnerships claims that

[t]he Indiana Board misinterpreted [the Court's holding in] *Jamestown [Homes* ] when it determine[d] that an owner of property, whose actions provide numerous benefits to it[s] tenants and the community in addition to providing safe, secure, clean and affordable housing ... is not eligible for [a] property tax exemption under Ind[iana] Code § 6–1.1–10–16, merely because it receives government grants, even if the grant has nothing to do with the [subject properties.]

(Pet'r Br. at 18.)

In *Jamestown Homes,* a nonprofit corporation, through its participation in the federal government's Section 221(d)(3) program, constructed an apartment com-

plex. *See Jamestown Homes,* 909 N.E.2d at 1139. Under that program, the federal government covered the corporation's mortgage insurance and subsidized a low-interest loan in an effort "to promote the construction of affordable housing for low to moderate-income families." *Id.* In exchange for the governmental assistance, the corporation agreed both to rent its apartments to certain income-qualifying tenants and to charge budget-based rents. *Id.*

In its hearing before the Indiana Board, the nonprofit corporation argued that its property was entitled to an exemption because "the provision of 'safe, decent and affordable housing for persons of lower income who could not otherwise afford such housing' [was] a charitable purpose." *Id.* at 1140. The Indiana Board denied the exemption, and on appeal, this Court affirmed the Indiana Board's exemption denial. *Id.* at 1145. In affirming the Indiana Board, the Court explained that the nonprofit corporation failed to provide probative evidence to demonstrate, among other things, that it had lessened the burden of government in meeting the need for affordable housing "because that need [was] ultimately being met by the government through its mortgage insurance and interest subsidy." *Id.* at 1144. Moreover, the Court noted in its analysis that numerous jurisdictions had rejected charitable exemptions on similar properties because, ultimately, any "charitable use" was achieved solely as a condition of the agreements with the federal government (*i.e.,* through their use, the properties were not relieving a government burden because the government was providing subsidies and financial assistance to them). *See id.* at 1143 n. 10.

■■■ Here, the Indiana Board explained in its final determination that Housing Partnerships needed to explain whether the federal government imposed any conditions on its receipt of the federal monies. (*See* Cert. Admin. R. at 477 ¶ 38.) The Indiana Board found Housing Partnerships' lack of evidence or explanation on this point significant because "[an] exemption for low income rental properties ha[d] been denied [in *Jamestown Homes* ] based on [the] incentives the property owner[ ] received to construct and operate such housing." (Cert. Admin. R. at 477 ¶ 38.) In other words, no probative evidence was offered for the Indiana Board to determine whether Housing Partnerships relieved the government of an expense it would otherwise have borne, or whether the government, through its federal grants, was still bearing the expense itself.

The Indiana Board concluded that Housing Partnerships did not provide facts showing that its provision of low-income housing met the legal requirements of a charitable purpose that would entitle it to an exemption from the general duty to pay property tax. This conclusion did not misinterpret *Jamestown Homes,* and it was reasonable. *See, e.g., Amax Inc. v. State Bd. of Tax Comm'rs,* 552 N.E.2d 850, 852 (Ind. Tax Ct.1990) (explaining that this Court will not affirm a final determination if it finds that a reasonable person, upon reviewing the administrative record in its entirety, would not be able to find enough relevant evidence to support the decision).

## CONCLUSION

For the foregoing reasons, Housing Partnerships has not demonstrated that the Indiana Board's final determination is arbitrary, capricious, an abuse of discretion, or contrary to law. Accordingly, the Court AFFIRMS the Indiana Board's final determination in this matter.