**6787 STEELWORKERS HALL,
INC., Petitioner,**

v.

**John R. SCOTT, Assessor of Porter
County, Respondent.**

No. 49T10–0906–TA–27.

Tax Court of Indiana.

Sept. 2, 2010.

James K. Gilday, Gilday & Associates, LLC, Indianapolis, IN, Attorney for Petitioner.

Gregory F. Zoeller, Attorney General of Indiana, Jessica E. Reagan, Andrew J. Asma, Deputy Attorneys General, Indianapolis, IN, Attorneys for Respondent.

FISHER, J.

6787 Steelworkers Hall, Inc. (hereinafter, "Local 6787") appeals the final determination of the Indiana Board of Tax Review (Indiana Board) denying its application for an educational/charitable purposes property tax exemption for the 2006 tax year (the year at issue). Local 6787's appeal presents a single issue for this Court's review: whether the Indiana Board's denial of Local 6787's exemption application is supported by substantial evidence.

## FACTS AND PROCEDURAL HISTORY

Local 6787, an affiliate of the United Steelworkers of America, was incorporated as a domestic not-for-profit corporation in 1967.[1] (Cert. Admin. R. at 82–90, 247 (footnote added).) It is recognized by the Internal Revenue Service as a 501(c)(5) organization.[2] Pursuant to its articles of incorporation, its purposes are "[t]o acquire title to real property, together with furnishings and fixtures thereon; and to maintain said property for offices, meeting halls, and social rooms to house and serve the needs, pleasure and conveniences of organized union labor." (Cert. Admin. R. at 83.) In addition, Local 6787's "incidental" purposes are "[t]o rent such property, lease such property, collect income therefrom and turn over the entire amount

thereof, less expenses, to the labor organization specified in [its] by-laws, to borrow money for the acquisition or improvement of the property, and to transfer property as security for such indebtedness." (Cert. Admin. R. at 83.)

During the year at issue, Local 6787 owned and operated a banquet facility and a union hall in Portage, Indiana (Portage Township). The construction of the banquet facility was completed in early December 2005; the construction of the adjoining union hall was completed several years prior. (See Cert. Admin. R. at 247, 279–81.) The Porter County Assessor (the Assessor) assigned the property an assessed value of $3,554,800 for the year at issue: $344,300 for the land and $3,210,500 for the improvements.

On June 5, 2006, Local 6787 filed an exemption application with the Assessor seeking an educational purposes exemption on both of its buildings, the land thereunder, and the personal property contained therein. On December 28, 2006, the Porter County Property Tax Assessment Board of Appeals (PTABOA) issued its final determination concluding that Local 6787's union hall, the personal property therein, and the land thereunder was exempt from property taxation. The PTABOA determined that the banquet facility, however, was 100 percent taxable.

Local 6787 subsequently filed a Petition for Review of Exemption with the Indiana Board. During the Indiana Board hearing, Local 6787 claimed that the banquet facility's eligibility for an educational/charitable purposes exemption was "obvious"

---

1. Local 6787 is owned by its members. During the year at issue, Local 6787 had between 3,400 and 33,000 members. (See Cert. Admin. R. at 264, 266; Pet'r Br. at 13.)

2. Section 501(c)(5) of the Internal Revenue Code exempts from federal income taxation those labor organizations that meet specified criteria. (See Cert. Admin. R. at 278.)

because the Assessor admitted that the union hall was exempt and, therefore, "any typical or customary union usage of [the banquet facility] should not be questioned as having an exempt purpose." (Cert. Admin. R. at 250.) *(See also* Cert. Admin. R. at 251 (where Local 6787 asserts that unions are, by definition, formed and operated for charitable purposes).) Nonetheless, Local 6787 also presented, *inter alia*, the testimony of Mr. Allen Long (Local 6787's financial secretary), a schedule of events, and a summary of the facility's overall usage to demonstrate that its banquet facility qualified for an 86.11 percent exemption.

During the hearing, Mr. Long explained that Local 6787's "essential" purposes were "best" expressed in two paragraphs of its by-laws. *(See* Cert. Admin. R. at 271, 276.) Those paragraphs provided that Local 6787's "objectives" were:

[1.] To establish through collective bargaining, adequate wage standards, shorter hours of work, and improvements in the conditions of employment for workers in industry.

[2.] To engage in educational, legislative, political, civic, social, welfare, community and other activities; to advance and safeguard the economic security and social welfare of workers in industry, the [United Steelworkers of America], its Local Unions and the free labor movements of the United States, Canada and the world; to protect and extend our democratic institutions and civil rights and liberties; and to perpetuate and extend the cherished traditions of democracy and social and economic justice in the United States, Canada and the world community.

(Cert. Admin. R. at 94.) Mr. Long testified that Local 6787 met the first objective by engaging in collective bargaining negotiations with Arcelor Mittal Steel. (Cert. Admin. R. at 265–66, 272.) According to Mr. Long, Local 6787's collective bargaining activities were "designed to provide relief from human want" for its members. (Cert. Admin. R. at 272.) Mr. Long testified that the activities planned and carried-out by Local 6787's educational, legislative, and community-involvement committees fulfilled the second objective and also provided its members with relief from human want.[3] *(See* Cert. Admin. R. at 273–76 (footnote added).)

With respect to Local 6787's use of its union hall and banquet facility, Mr. Long explained that Local 6787 used the union hall for the sole purpose of conducting "day-to-day" union business. (Cert. Admin. R. at 281–82.) Local 6787's use of its 22,000 square foot banquet facility, however, varied: weddings/banquets were held in the facility, Ivy Tech taught culinary courses (primarily for Local 6787 members) in the facility, other charitable organizations such as the American Heart Association and the United Way used the facility free-of-charge, and union meetings/activities were conducted throughout the facility. *(See* Cert. Admin. R. at 148–52, 285, 306–07, 323–24, 330.) Mr. Long explained that during the year at issue, the banquet facility was used 41.67 percent of the time for union related activities, 44.44 percent of the time for culinary classes, and 13.89 percent of the time for

---

3. For example, Mr. Long explained that Local 6787 assisted its laid-off members by operating a food bank, providing counseling services, and offering an "educational benefit program." (Cert. Admin. R. at 275–76.) *(See also* Cert. Admin. R. at 306, 328 (describing the "educational benefit program").) While 490 of Local 6787's members were laid off as of the Indiana Board hearing in 2009, none of its members were laid off during the year at issue. (Cert. Admin. R. at 267.)

weddings/banquets.[4] (*See* Cert. Admin. R. at 151–52, 292 (footnote added).) Accordingly, Local 6787 claimed that it was entitled to an 86.11 percent exemption as that reflected the amount of time that the banquet facility was used for educational/charitable purposes (i.e., union related activities and culinary classes). (Cert. Admin. R. at 313–14.)[5]

On May 8, 2009, the Indiana Board issued its final determination concluding that Local 6787 had not demonstrated that the banquet facility was predominately used for educational/charitable purposes.[6] More specifically, the Indiana Board found that Local 6787's evidence established that its "main function ... [was] to promote [its] member's interests in their employment with Arcelor Mittal Steel." (Cert. Admin. R. at 29 ¶ 31.) As such, the Indiana Board concluded that any uses of the banquet facility that appeared to be educational or charitable in nature were "merely incidental to [Local 6787's] main purpose of promoting its members' employment interests." (Cert. Admin. R. at 29 ¶¶ 32–33.) The Indiana Board also explained that Local 6787's evidence did not demonstrate that the banquet facility was predominately used by Ivy Tech, the Unit-

ed Way, and the American Heart Association. (Cert. Admin. R. at 31 ¶¶ 34–35.)

On June 22, 2009, Local 6787 initiated this original tax appeal. The Court heard the parties' oral arguments on July 16, 2010. Additional facts will be supplied as necessary.

## ANALYSIS AND OPINION

### Standard of Review

■ The party seeking to overturn an Indiana Board final determination bears the burden of demonstrating its invalidity. *Osolo Twp. Assessor v. Elkhart Maple Lane Assocs.*, 789 N.E.2d 109, 111 (Ind. Tax Ct.2003). Accordingly, Local 6787 must demonstrate to the Court that the Indiana Board's final determination is:

(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(2) contrary to constitutional right, power, privilege, or immunity;

(3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory jurisdiction, authority, or limitations;

(4) without observance of procedure required by law; or

---

4. The union related activities occurring on a monthly basis were: Steelworkers Organization of Active Retirees (SOAR) meetings, Northwest Indiana Federation of Labor (NIFL) meetings, Local 6787 executive board meetings, and Local 6787 union meetings. (*See* Cert. Admin. R. at 148–52, 294–95, 297–98, 302–03.) On a weekly basis, Local 6787 used the facility to conduct meetings for its safety committee and its griever's committee. (*See* Cert. Admin. R. at 148–50.)

5. The Assessor's presentation of evidence was precluded during the Indiana Board hearing. More specifically, the Indiana Board did not admit the Assessor's evidence because he had not complied with the Indiana Board's "Order Regarding Conduct of Exemption Hearing" and 52 IAC 2–7–1. (*See* Cert. Admin. R.

at 16–17, 241–46.) *See also* 52 IND. ADMIN. CODE 2–7–1(b)(1) (2006) (*see* http://www.in.gov/legislative/iac/) (instructing the Assessor to provide Local 6787 with "[c]opies of [its] documentary evidence and summaries of [any] statements of testimonial evidence at least five (5) business days before the hearing").

6. Property is predominately used for educational/charitable purposes when it is used "for one (1) or more of those purposes during more than fifty percent (50%) of the time that it is used ... in the year that ends on the assessment date of the property" (i.e., March 1, 2006). IND.CODE ANN. § 6-1.1-10-36.3(a) (West 2006). *See also* IND.CODE ANN § 6–1.1–1–2 (West 2006) (amended 2007).

(5) unsupported by substantial or reliable evidence.

IND.CODE ANN. § 33–26–6–6(e)(1)–(5) (West 2010). In reviewing the Indiana Board's final determination, the Court will defer to the Indiana Board's factual findings (if they are supported by substantial evidence [7]) but will review any questions of law arising therefrom *de novo. Cedar Lake Conference Ass'n v. Lake County Prop. Tax Assessment Bd. of Appeals,* 887 N.E.2d 205, 207 (Ind.Tax Ct.2008) (citations omitted) (footnote added), *review denied.* The Court will not reweigh the evidence or judge the credibility of the witnesses. *See Freudenberg–NOK Gen. P'ship v. State Bd. of Tax Comm'rs,* 715 N.E.2d 1026, 1030 (Ind.Tax Ct.1999) (citations omitted), *review denied.*

### Discussion

█ All tangible property is subject to taxation in Indiana. *See* IND.CODE ANN. § 6–1.1–2–1 (West 2010). Nevertheless, the Indiana Constitution provides that the legislature may exempt certain categories of property from taxation. *See* IND. CONST. art. X, § 1. Pursuant to this grant of authority, the legislature enacted Indiana Code § 6–1.1–10–16 which, during the year at issue, provided that "[a]ll or part of a building is exempt from property taxation if it is owned, occupied, and used ... for educational ... or charitable purposes."

IND.CODE ANN. § 6–1.1–10–16(a) (West 2006) (amended 2007). This exemption also generally extended to the land on which the exempt building was situated, as well as the personal property contained therein. *Id.* at (c), (e).

█ Taxpayers bear the burden of proving entitlement to the tax exemptions they seek. *State Bd. of Tax Comm'rs v. New Castle Lodge # 147, Loyal Order of Moose, Inc.,* 765 N.E.2d 1257, 1259 (Ind. 2002). Accordingly, a taxpayer seeking a property tax exemption under Indiana Code § 6–1.1–10–16(a) must demonstrate that it owns, occupies, and exclusively or predominately uses its property for exempt purposes.[8] *See Indianapolis Osteopathic Hosp., Inc. v. Dep't of Local Gov't Fin.,* 818 N.E.2d 1009, 1014 (Ind.Tax Ct.2004) (citation omitted) (footnote added), *review denied.*

In its appeal to this Court, Local 6787 asserts that the Indiana Board's final determination must be reversed because Local 6787 *prima facie* established that the banquet facility was used 86.11 percent of the time for educational/charitable purposes. More specifically, Local 6787 argues that it demonstrated that both its organizational purposes and uses of the banquet facility were educationally and charitably grounded because: 1) labor unions are "inherently" charitable in nature and have historically been granted proper-

---

7. "[E]vidence will be considered substantial if it is more than a scintilla and less than a preponderance or if it would be accepted as adequate to support a conclusion by a reasonable mind." *French Lick Twp. Tr. Assessor v. Kimball Int'l Inc.,* 865 N.E.2d 732, 739–40 n. 14 (Ind.Tax Ct.2007) (citation omitted).

8. When property is *predominately used* for exempt purposes by a person other than a church, religious society, or not-for-profit school, the exemption provided pursuant to Indiana Code § 6–1.1–10–16(a) is limited to the portion of the property's assessment that:

bears the same proportion to the total assessment of the property as the amount of time that the property was used ... for one (1) or more of the [exempt] purposes during the year that ends on the assessment date of the property bears to the amount of time that the property was used ... for any purpose during that year.

A.I.C. § 6–1.1–10–36.3(c)(3). *In other words, the amount of the exemption is based on a reconciliation of the property's actual usage: namely, a comparison of its exempt and nonexempt uses. See id.*

ty tax exemptions; 2) the union hall has always been exempted from property taxation; 3) the provisions of Local 6787's by-laws were educational/charitable in nature; 4) culinary classes were taught within the facility; and 5) Local 6787 "donated" the banquet facility to other charitable entities whenever possible. (*See* Pet'r Br. at 11–17, 25–29, 32.) The Court disagrees.

Local 6787 claims that because its union activities were charitable in nature, both it and its uses of the facility were charitable. (*See* Cert. Admin. R. at 250–51 (claiming that "the purposes for which unions are formed and operated are by definition charitable").) (*See also* Oral Argument Tr. at 8 (referring to its union hall's long-standing exemption status).) This claim does not, however, establish that Local 6787 predominately used its banquet facility for charitable or educational purposes for several reasons. First, as the Indiana Board recognized, Local 6787 provided no citation to Indiana statutes, case law, or any other persuasive authority for the proposition that unions are inherently charitable. (*See* Cert. Admin. R. at 28 ¶ 30.) *See also Bulkmatic Transp. Co. v. Dep't of State Revenue*, 691 N.E.2d 1371, 1375 (Ind.Tax Ct.1998) (rejecting a taxpayer's argument that was unsupported by any authority). Second, the fact that Local 6787's union hall qualified for a property tax exemption in the past does not automatically mean that its *banquet facility* should be deemed exempt for the year at issue. *See Jamestown Homes of Mishawaka, Inc. v. St. Joseph County Assessor*, 914 N.E.2d 13, 15 (Ind.Tax Ct.2009) (providing that each and every exemption case stands on its own facts and, ultimately, how the parties present those facts) (citation omitted), *review denied.* Here, the administrative record does not reveal what "day-to-day" union activities were considered educational/charitable; thus, there is

no evidence as to how the educational or charitable uses of the union hall coincided with the uses of the banquet facility. In fact, the administrative record reveals that the activities conducted in the union hall and the banquet facility did not coincide at all. (*See* Cert. Admin. R. at 302–04, 319–22.)

Third, while Local 6787's by-laws evidence some charitable/educational intent as to the organization, intent does not establish predominate use. *See National Ass'n of Miniature Enthusiasts v. State Bd. of Tax Comm'rs*, 671 N.E.2d 218, 221–22 (Ind.Tax Ct.1996) (taxpayer's articles of incorporation and "code of regulations" declaring exempt purposes did not demonstrate that its predominate use of property was educational/charitable). Likewise, Local 6787's status as a not-for-profit corporation is insufficient to support a finding of predominate use. *See Lincoln Hills Dev. Corp. v. State Bd. of Tax Comm'rs*, 521 N.E.2d 1360, 1361 (Ind.Tax Ct.1988) (under Indiana Code § 6–1.1–10–16, an entity must show that its property is actually used for exempt purposes, not merely that it has been granted not-for-profit status). Finally, Local 6787's educational uses of the banquet facility (i.e., the culinary classes) were insufficient to support a finding of predominate use because the facility was used for such activities less than 50 percent of the time for the year at issue. Consequently, the Court cannot say that the Indiana Board erred in rejecting Local 6787's exemption application.

■ The evaluation of whether property is used for educational/charitable purposes is a fact-sensitive inquiry; there are no bright-line tests. *See Jamestown Homes*, 914 N.E.2d at 15 (citation omitted). Here, the Indiana Board's final determination indicates that it assigned minimal weight to

Local 6787's arguments because they were not supported by substantial evidence. As the fact finder, it was well within the purview of the Indiana Board to make that determination. *See French Lick Twp. Tr. Assessor v. Kimball Int'l, Inc.*, 865 N.E.2d 732, 739 (Ind.Tax Ct.2007) (explaining the taxpayer bears the burden of making the Indiana Board understand its evidence).[9,10]

### CONCLUSION

For the above stated reasons, the Court AFFIRMS the Indiana Board's final determination.

9. Local 6787 claims that the Assessor's admission during the Indiana Board hearing, that Local 6787's organizational purposes and its uses of the banquet facility were both charitable and educational, clearly established Local 6787's entitlement to the exemption. (*See* Oral Argument Tr. at 7 (*citing* Cert. Admin. R. at 337–38).) Local 6787 is incorrect. The Indiana Board determines whether an entity predominately uses its property for exempt purposes based on the *totality of the evidence*, not merely on the testimony of the parties.

10. Local 6787 also claims that the Indiana Board erred when it determined that all labor unions were *per se* ineligible for property tax exemptions. (*See* Pet'r Br. at 30 (*quoting* Cert. Admin. R. at 30 ¶ 34 (where the Indiana Board stated, "if the legislature intended union activities to be exempt, it would have provided a specific exemption for that use")).) The Indiana Board did not, however, make such a determination. Rather, it explained that because the use of property for union activities was not a *per se* exemption qualifier under Indiana Code § 6–1.1–10–16, Local 6787 needed to provide additional support in order to demonstrate that those activities were indeed educational/charitable in nature. (*See* Cert. Admin. R. at 28–31 ¶¶ 30–33.)