ATTORNEYS FOR PETITIONER:
**BRIAN A. CUSIMANO**
ATTORNEY AT LAW
Indianapolis, IN

**MARILYN S. MEIGHEN**
ATTORNEY AT LAW
Carmel, IN

**JEFFREY D. COLLINS**
ATTORNEY AT LAW
Indianapolis, IN

RESPONDENTS APPEARING PRO SE:
**PAUL L. CHAVEZ**
**JOAN E. CHAVEZ**
Auburn, IN



FILED
Jan 29 2016, 4:55 pm
CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# INDIANA TAX COURT

_____

|  |  |  |
|---|---|---|
| DEKALB COUNTY ASSESSOR, | ) | |
| Petitioner, | ) | |
| v. | ) | Cause No. 49T10-1502-TA-00006 |
| PAUL L. and JOAN E. CHAVEZ, | ) | |
| Respondents. | ) | |

_____

ON APPEAL FROM A FINAL DETERMINATION OF
THE INDIANA BOARD OF TAX REVIEW

**FOR PUBLICATION**
**January 29, 2016**

WENTWORTH, J.

The DeKalb County Assessor challenges the Indiana Board of Tax Review's final determination reclassifying 2.72 acres of Paul and Joan Chavezes' land from excess residential to agricultural for the 2013 tax year. The Court affirms the Indiana Board's decision.

## FACTS AND PROCEDURAL HISTORY

In the 1980's, Paul and Joan Chavez purchased 5.18 acres of property in Auburn, Indiana, for $2,500. (See Cert. Admin. R. at 4, 73-74, 118.) On the March 1, 2013 assessment date, the property was partially wooded and included a mobile home, a detached garage, and three pole barns. (See Cert. Admin. R. at 73-74, 92-96.) For property tax purposes, the Assessor classified one acre proximate to the mobile home as a residential homesite, 2.72 wooded acres as excess residential, .68 acres as a legal ditch, and .78 acres as a public road for a total land assessed value of $44,200. (See Cert. Admin. R. at 3, 71, 164.)

Believing the total assessment to be too high, the Chavezes filed an appeal with the DeKalb County Property Tax Assessment Board of Appeals (PTABOA). The PTABOA, based upon a recommendation from the Assessor's office, reduced the land assessment to $32,800. (Cert. Admin. R. at 13-14.)

Still believing the land assessment was excessive, the Chavezes appealed to the Indiana Board, which held a hearing on August 14, 2014. During the hearing, Mr. Chavez claimed that the 2.72 acres of excess residential land should be classified as agricultural because he purchased the property "as a woods" and intended to grow and harvest the trees as the previous owner had. (See Cert. Admin. R. at 175-85.) Although the property had been "logged out" at the time of purchase, some of the trees were mature in 2013, while others were still maturing. (See Cert. Admin. R. at 175-77.) None of the trees, however, had been harvested in 2013. (Cert. Admin. R. at 184-85.)

On January 6, 2015, the Indiana Board issued its final determination that found the Assessor erred in classifying the 2.72 acres as excess residential and reclassified

2

them as agricultural. (See Cert. Admin. R. at 34 ¶ 38.) On February 19, 2015, the Assessor initiated this original tax appeal. The Court heard oral argument on September 25, 2015.[1] Additional facts will be supplied as necessary.

**STANDARD OF REVIEW**

The party seeking to overturn an Indiana Board final determination bears the burden of demonstrating its invalidity. Kildsig v. Warrick Cnty. Assessor, 998 N.E.2d 764, 765 (Ind. Tax Ct. 2013). Accordingly, the Assessor must demonstrate to the Court that the Indiana Board's final determination is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; contrary to constitutional right, power, privilege, or immunity; in excess of or short of statutory jurisdiction, authority, or limitations; without observance of the procedure required by law; or unsupported by substantial or reliable evidence. See IND. CODE § 33-26-6-6(e)(1)-(5) (2016).

**LAW AND ANALYSIS**

The Assessor contends that the Indiana Board's final determination reclassifying 2.72 acres as agricultural land is both contrary to law and unsupported by substantial evidence. (Pet'r Br. at 3, 5-8.) Specifically, the Assessor argues that the Indiana Board erred in finding that the 2.72 acres were devoted to an agricultural use in accord with Indiana Code § 6-1.1-4-13(a) and failed to support its finding with substantial evidence by relying solely on the taxpayer's intent to harvest timber on the land at the time of purchase. (See Pet'r Br. at 3-8.)

"[L]and shall be assessed as agricultural land only when it is devoted to agricultural use." IND. CODE § 6-1.1-4-13(a) (2013). Indiana Code § 6-1.1-4-13 does not

---

[1] The Court held oral argument at the Indiana Tech Law School in Fort Wayne, Indiana. The Court thanks the law school for its hospitality, the parties and their counsel for traveling to Fort Wayne, and their able advocacy.

define the phrase "devoted to agricultural use." See I.C. § 6-1.1-4-13. Indiana's assessment guidelines, however, identify woodland, i.e., "land supporting trees capable of producing timber or other wood products," as an agricultural use.[2] REAL PROPERTY ASSESSMENT GUIDELINES FOR 2011 (Guidelines) (incorporated by reference at 50 IND. ADMIN. CODE 2.4-1-2 (2011) (see http://www.in.gov/legislative.iac/)), Bk. 1, Ch. 2 at 89. Moreover, the guidelines identify factors that should be considered in determining whether land is woodland, e.g., the existence of a timber management plan, the harvesting and sale of the timber, the purchaser's intent when purchasing the land, and whether there was a change in the use of the property. See, e.g., Guidelines, Bk. 1, Ch. 2 at 80-82, 89-91. The guidelines also explain that "[o]f particular interest . . . is the reason for the purchase of the land." Guidelines, Bk. 1, Ch. 2 at 89.

The Assessor first argues that the Chavezes' land was not devoted to the harvesting of timber because they did not have any "formal plans for the harvesting of any of the trees." (See Pet'r Br. at 5-6.) The Assessor explained that without any specific plans, the circumstances established only a "casual motivation" that the Chavezes' land was actually used as woodland. (See Pet'r Br. at 6.) The guidelines provide, however, that having a timber management plan in place is just one factor, among others, that would assist in determining whether land is devoted to that agricultural use. See Guidelines, Bk. 1, Ch. 2 at 89-91. Accordingly, the mere fact that the Chavezes do not have a timber management plan does not mean that their 2.72 acres are not devoted to an agricultural use. See Orange Cnty. Assessor v. Stout, 996

---

[2] Indiana Code § 6-1.1-4-13 was amended in 2015 adding "land devoted to the harvesting of hardwood timber is considered to be devoted to agricultural use." IND. CODE § 6-1.1-4-13(b)(4) (2015).

4

N.E.2d 871, 876 (Ind. Tax Ct. 2013) (recognizing that the lack of a timber management plan alone is not dispositive of whether a property is used for agricultural purposes).

In addition to their lack of a timber management program, the Assessor explains that the Chavezes never harvested any timber from their property since they purchased it in the 1980's and thus could not have devoted the land to an agricultural use. (See Pet'r Br. at 5-6.) The Assessor further explains that the Indiana Board's decision was based on a hypothetical future use of the property with no factual support. (See Pet'r Br. at 7.) Again, however, the guidelines state that timber harvests are but one factor in determining whether land is devoted to agricultural use. See Guidelines, Bk. 1, Ch 2 at 91 (stating that regular forest harvests over a long period of time may indicate use as woodland). Accordingly, the Court cannot find the Indiana Board erred in reclassifying the Chavezes' land despite the fact they neither had a timber management plan nor had they harvested any trees. See Guidelines, Bk. 1, Ch. 2 at 89 (explaining that no one of the factors alone is controlling).

The Indiana Board's final determination reveals that it gave significant weight to Mr. Chavez's testimony that he and his wife purchased the property in the 1980's as a "woods" and intended to harvest the trees and sell timber, just as the prior owner had. (See Cert. Admin. R. at 32 ¶ 33.) The Assessor claims, however, that by giving more weight to the Chavezes' intent at the time of purchase than to the other factors identified in the guidelines creates an unworkable standard, as it would "place[] an impossible burden on [assessors generally] to assess a property's actual use." (Pet'r Br. at 8.) The Court applies the law, however, as written; the Assessor's remedy therefore lies with the Legislature. Accordingly, the Assessor's argument does not persuade the Court to

5

either ignore the purchaser's intent at the time of purchase or refuse to give it heightened import as the guidelines set forth.

Finally, the Assessor claims that the Indiana Board erroneously based its final determination solely on the Chavezes' subjective intent to harvest the trees at the time of purchase. (See Pet'r Br. at 7.) This claim is also without merit because the Indiana Board also analyzed whether the facts demonstrated that there had been a change in the Chavezes' use of their land. See Guidelines, Bk. 1, Ch. 2 at 82 (illustrating that a parcel – initially classified as agricultural – should continue to be classified as agricultural when its use has not changed). As noted above, Mr. Chavez testified that the prior owner had "logged" the property out and in 2013, some of the trees were mature and some were still maturing. (Cert. Admin. R. at 175-77.) In addition, an aerial view of their property revealed a full canopy of trees. (See Cert. Admin. R. at 70; Oral Arg. Tr. at 24 (where the Assessor acknowledged that in March 2013, trees were growing on the 2.72 acres).) The Indiana Board noted that even though Chavez cut some of the trees for firewood, this did not indicate a change of use. (See Cert. Admin. R. at 32-33 ¶ 33.) Consequently, the Indiana Board properly concluded that there was no evidence demonstrating that the Chavezes took any steps to change the use of the 2.72 acres. (See Cert. Admin. R. at 33 ¶ 34.)

The guidelines provide several factors to consider when determining whether land is woodland and is therefore devoted to an agricultural use under Indiana Code § 6-1.1-4-13(a). The Indiana Board did not act contrary to law when it analyzed these very factors to determine that the Chavezes' 2.72 acres were devoted to an agricultural use. Furthermore, the Assessor's claim that the Indiana Board's final determination was

6

not supported by substantial or reliable evidence must also fail because the record contains more than a scintilla of supporting evidence and a reasonable person viewing the entire record could find enough relevant evidence to support the Indiana Board's final determination. See 6787 Steelworkers Hall, Inc. v. Scott, 933 N.E.2d 591, 595 n.7 (Ind. Tax Ct. 2010) (holding that evidence is substantial if it is more than a scintilla and less than a preponderance); see also Kildsig, 998 N.E.2d at 767 (stating that an Indiana Board's final determination is supported by substantial evidence "'if a reasonable person could view the record in its entirety and find enough relevant evidence to support the . . . determination'" (citation omitted)). To find that the evidence does not support the Indiana Board's conclusion would require the Court to reweigh the evidence, which it cannot do. See Kildsig, 998 N.E.2d at 767 (explaining that the Court may not reweigh the evidence that was presented to the Indiana Board).

## CONCLUSION

For the above-stated reasons, the final determination of the Indiana Board is AFFIRMED.

7