ATTORNEY FOR PETITIONER:
**MELISSA G. MICHIE**
TAX CONSULTANTS, INC.
Columbus, IN

ATTORNEYS FOR RESPONDENT:
**MARILYN S. MEIGHEN**
ATTORNEY AT LAW
Carmel, IN

**BRIAN A. CUSIMANO**
ATTORNEY AT LAW
Indianapolis, IN

# IN THE
# INDIANA TAX COURT

| | | |
|---|---|---|
| CHEVROLET OF COLUMBUS, INC., | ) | |
| Petitioner, | ) | |
| v. | ) | Cause No. 23T-TA-00006 |
| BARTHOLOMEW COUNTY ASSESSOR, | ) | |
| Respondent. | ) | |

FILED
Mar 19 2024, 3:33 pm
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ON APPEAL FROM A FINAL DETERMINATION OF
THE INDIANA BOARD OF TAX REVIEW

**FOR PUBLICATION**
**March 19, 2024**

MCADAM, J.

Chevrolet of Columbus, Inc., ("Chevrolet") challenges the Indiana Board of Tax Review's ("Indiana Board") final determination upholding Chevrolet's property tax assessments for tax years 2016 and 2017. Chevrolet claims the Indiana Board made two errors in rejecting its appeal. The first is that the Indiana Board exceeded the Tax Court's directive on remand by allowing the parties to submit additional briefs. The second is that the Indiana Board's determination affirming the land assessment rates

1

applied by the Bartholomew County Assessor (the "Assessor") was arbitrary, capricious, an abuse of discretion, and unsupported by substantial and reliable evidence. The Court rejects both challenges and affirms the Indiana Board's final determination.

## FACTS AND PROCEDURAL HISTORY

Chevrolet owns an automotive sales and service facility in Columbus, Indiana. For the 2016 and 2017 tax years, the Assessor classified the land underlying the sales and service facility as primary land and the remaining land as usable undeveloped land. The Assessor applied base rates of $13 per square foot for the primary land and $3.90 per square foot for the usable undeveloped land for both tax years.[1]

On September 3, 2019, believing that the Assessor had mistakenly applied the wrong base rates to its land, Chevrolet appealed its 2016 and 2017 land assessments seeking to correct the base rates as clerical, mathematical, or typographical errors. It first appealed to the Bartholomew County Property Tax Assessment Board of Appeals and then to the Indiana Board.[2] Chevrolet claimed that the proper base rates were $10 per square foot for the primary land and $3 per square foot for the usable undeveloped land. The Indiana Board determined that Chevrolet's appeals were untimely filed. As such, it dismissed Chevrolet's appeals before deciding whether the Assessor applied

---

[1] A "base rate" is the value of land established by an assessor to represent the typical and average characteristics of lots in a defined area. It is the starting point for an assessment of property in a neighborhood and may be combined with or adjusted by other factors to determine the assessed value of a parcel of land. A base rate is expressed as a dollar amount per unit of area (e.g., per square foot, per acre, etc). *See, e.g.,* REAL PROPERTY ASSESSMENT GUIDELINES FOR 2021 ("Guidelines") (incorporated by reference at 50 IND. ADMIN. CODE 2.4-1-2(c) (2020)), Ch. 2.

[2] Chevrolet also appealed its 2018 assessment, but that appeal is not at issue in this case. (*See* Pet'r Br. at 1.)

the proper base rates to Chevrolet's 2016 and 2017 land assessments.

Chevrolet then appealed the Indiana Board's decision to this Court, which reversed and remanded the case back to the Indiana Board. *Chevrolet of Columbus, Inc. v. Bartholomew Cnty. Assessor*, 187 N.E.3d 349, 354 (Ind. Tax Ct. 2022). The Court instructed the Indiana Board to determine whether the Assessor applied the proper base rates to Chevrolet's 2016 and 2017 assessments "based exclusively on the evidence already included in the certified administrative record." *Id.*

On remand, the Indiana Board held a status conference to discuss setting a hearing at which the parties could make oral argument on the remanded issue. The parties requested that they be allowed to submit briefs instead, and the Indiana Board granted their request. (*See* Cert. Admin. R. at 208 ¶ 7.) The Indiana Board subsequently issued a second final determination in the matter, finding that the Assessor had applied the proper base rates for the disputed tax years and ordering no change to Chevrolet's 2016 and 2017 land assessments. (*See* Cert. Admin. R. at 215 ¶ 35.) Chevrolet then filed this appeal.

## STANDARD OF REVIEW

The Court's review of Indiana Board decisions is governed by Indiana Code § 33-26-6-6, the provisions of which closely mirror those controlling the judicial review of administrative decisions governed by Indiana's Administrative Orders and Procedures Act ("AOPA"). *Compare* IND. CODE § 33-26-6-6(e) (2024) *with* IND. CODE § 4-21.5-5-14(d) (2024). Under Indiana Code § 33-26-6-6(b), the party seeking to overturn a final determination of the Indiana Board bears the burden of demonstrating its invalidity. The challenger must demonstrate that the Indiana Board's final determination is arbitrary,

capricious, an abuse of discretion, or otherwise not in accordance with law; contrary to constitutional right, power, privilege or immunity; in excess of or short of statutory jurisdiction, authority, or limitations; without observance of the procedure required by law; or unsupported by substantial or reliable evidence. I.C. § 33-26-6-6(e)(1)-(5).

The Legislature has specifically designated the Indiana Board as the trier of fact, charged with determining the relevance and weight to be assigned to the evidence before it. *See* IND. CODE § 6-1.1-15-4(p) (2024). Like the review of administrative decisions subject to AOPA, this Court reviews legal conclusions *de novo* but affords deference to the factual determinations of the Indiana Board if they are supported by substantial and reliable evidence. *See* I.C. § 33-26-6-6(e)(5); *Indiana Alcohol & Tobacco Comm'n v. Spirited Sales, LLC*, 79 N.E.3d 371, 375 (Ind. 2017) (articulating the standard of review of administrative actions under AOPA); *Kellam v. Fountain Cnty. Assessor*, 999 N.E.2d 120, 122 (Ind. Tax Ct. 2013) (articulating the standard of review for Indiana Board decisions). The Court may not substitute its judgment for that of the Indiana Board by reweighing the evidence or reevaluating the credibility of witnesses. *See* IND. CODE § 33-26-6-3(b) (2024); *Kellam*, 999 N.E.2d at 122.

**DISCUSSION AND DECISION**

**Indiana Board's Compliance with the Court's Instructions on Remand**

Chevrolet first contends that the Indiana Board exceeded its statutory authority under Indiana Code § 6-1.1-15-8 when it allowed the parties to submit briefs on the issues remanded by this Court. In Chevrolet's view, the additional briefing created new records and expanded the certified administrative record in contravention of this Court's instructions. The Court's remand order, however, did not prohibit new records of all

4

kinds, just new evidence.

Section 6-1.1-15-8 allows the Indiana Board to conduct further proceedings following remand only if conducted "under the tax court's instructions[.]" IND. CODE § 6-1.1-15-8(a) (2021). This Court instructed the Indiana Board to resolve the remanded issues "based exclusively on the *evidence* already included in the certified administrative record." *Chevrolet of Columbus*, 187 N.E.3d at 354 (emphasis added). The Indiana Board strictly adhered to this instruction by limiting additional briefing to the existing record and by not considering evidence outside the record in its final determination. As Chevrolet concedes in its briefing to this Court, arguments in briefs are not evidence. (*See* Pet'r Reply Br. at 1-2.) *See also Briggs v. Clinton Cnty. Bank & Tr. Co. of Frankfort, Ind.*, 452 N.E.2d 989, 1014 (Ind. Ct. App. 1983). The Court's instruction was a recognition that the parties had already presented their cases fully and that a decision by the Indiana Board on Chevrolet's remanded claim was all that remained. The creation of additional non-evidentiary records in the form of briefs was not inconsistent with the Court's instruction. Accordingly, the Indiana Board did not exceed its statutory authority on remand.

**Determination of the Proper Land Base Rates**

Chevrolet's primary claim is that the Indiana Board abused its discretion, acted arbitrarily and capriciously, and lacked substantial and reliable evidence when it determined that the Assessor applied the proper base rates to Chevrolet's 2016 and 2017 land assessments. Chevrolet argues that the actual base rates adopted by the Assessor's predecessor in 2012 are reflected in a spreadsheet obtained from the Assessor and are lower than those applied to its land. The statutory provision

underlying Chevrolet's appeal allows a taxpayer to "raise any claim of an error [in the taxpayer's assessment] related to . . . a clerical, mathematical, or typographical mistake." IND. CODE § 6-1.1-15-1.1(a)(4) (2021). It requires Chevrolet to prove at a minimum that the base rates applied by the Assessor were incorrect. Here, the Indiana Board found that the rates applied by the Assessor were the correct rates and that Chevrolet failed to meet its burden under the statute. The Court is persuaded that the Indiana Board's decision was reasonable and supported by the evidence in the record.

*Additional Background Facts*

The certified administrative record reveals that in April 2019, Chevrolet's representative asked the Assessor for a copy of anything she had concerning the 2012 land order.[3] The only document dealing with the proposed values for the 2012 reassessment that the Assessor, who had taken office in 2013, claimed she could find was a spreadsheet with "current" and "proposed" base rates for various neighborhoods.[4] The spreadsheet listed "current" and "proposed" primary land base rates for the subject property's neighborhood of $10 per square foot and $10.50 per square foot, respectively. (*See* Cert. Admin. R at 30-31, 34, 36, 67.) The spreadsheet also indicated that usable undeveloped land would be assessed at thirty percent of the stated rate for each neighborhood. The Assessor e-mailed the spreadsheet to Chevrolet's representative.

---

[3] Land base rates are contained in what is commonly known as a land order. *See Camelot Co. v. Bartholomew Cnty. Assessor*, 224 N.E.3d 1007, 1011 (Ind. Tax Ct. 2023).

[4] All property within a county is separated into neighborhoods defined by the assessor. Neighborhoods are established based on multiple factors, including common development characteristics, the size of lots or tracts, schools and other taxing district boundaries, sales statistics, and other characteristics. (*See*, *e.g.*, Guidelines, Ch. 2.)

When Chevrolet's representative e-mailed the Assessor explaining that the spreadsheet did not have headers, the Assessor responded with two additional e-mails. In the first, sent on April 22, 2019, the Assessor wrote, "It took me some digging, but I finally found the headers for this spreadsheet. [They are] tucked at the bottom of the 2011 land order done by a previous [vendor]." (*See* Cert. Admin. R. at 30.) The e-mail included an image of the referenced headers above an excerpt of the spreadsheet. In a second e-mail sent sixteen minutes later, the Assessor explained that she was not sure what the spreadsheet represented:

> [M]y last email doesn't make a lot of sense. The spreadsheet was done by a previous vendor. I haven't checked to see if these were the value[s] used in the 2012 reassessment. It looks that way, but ??? If so, they would have been in place 2012 thru 2017. The new land order took effect 1-1-2018. When I took over in 2013, I used what was in the computer and adjusted [the] buildings to account for value issues.

(*See* Cert. Admin. R at 30.)

At the hearing, the Assessor presented screenshots from the Assessor's INCAMA system and property record cards for Chevrolet and other taxpayers located in the same neighborhood.[5] One set of screenshots show the base rate for primary land in Chevrolet's neighborhood as $13 per square foot for each year from 2012 through 2017. Another screenshot shows the neighborhood's base rate for 2018, the first year of

---

[5] The INCAMA (Indiana Computer-Aided Mass Appraisal) system is the computer software system through which the Bartholomew County Assessor manages and administers property tax assessments.

A property record card is "[a] document specially designated to record and process specified property data." (*See, e.g.,* Guidelines, Glossary at 25.) It includes the property's location, ownership, and site characteristics as well as a parcel's neighborhood and the base rate for that neighborhood. (*See, e.g.,* Guidelines, Ch. 2.)

the new assessment cycle, as $15 per square foot for primary land.[6] The property record cards for Chevrolet list the base rate for primary land as $13 per square foot for 2016 and 2017 and as $15 per square foot for 2018. The property record cards for four other commercial properties in Chevrolet's neighborhood also show the base rate for primary land as $13 per square foot from 2012 through 2016.

*Review of the Indiana Board's Determination*

To prevail on its claim that the Indiana Board's decision was unsupported by substantial and reliable evidence, Chevrolet must show that a reasonable person reviewing the entire record could not find enough relevant evidence to conclude that correct base rates were applied. *DeKalb Cnty. Assessor v. Chavez*, 48 N.E.3d 928, 931-932 (Ind. Tax Ct. 2016). The Indiana Board's decision will stand so long as there is more than a scintilla of evidence such that a reasonable mind might accept as adequate. *Amax Inc. v. State Bd. of Tax Comm'rs*, 552 N.E.2d 850, 852 (Ind. Tax Ct. 1990). A reviewing court may overturn a decision for lack of substantial evidence only if the agency's conclusions are shown to be clearly erroneous in light of all of the evidence. *Moriarity v. Indiana Dep't Nat. Res.*, 113 N.E.3d 614, 622 (Ind. 2019). Based on this factual record, the Court is not persuaded that Chevrolet has met its burden here.

Though the record in this case is less than perfect as it lacks the official documentation originally establishing the base rates, the record evidence paints a consistent and plausible picture of the base rates applied during the tax years at issue. The screenshots from the Assessor's computer system show the same base rates were applied in each year from 2012 through 2017. They also show that the rates were

---

[6] The Assessor adopted new land base rates in 2018 as part of a new assessment cycle.

8

accurately updated in the computer assessment system in 2018 when the Assessor adopted new base rates. And, the property record cards for the other commercial properties in Chevrolet's neighborhood show that the base rates were applied uniformly across multiple taxpayers and across multiple years.

The spreadsheet relied on by Chevrolet to rebut these rates is too speculative to compel the conclusion sought by Chevrolet. The information it contains is far from conclusive and reasonably characterized by the Indiana Board as a "preliminary analysis," particularly in the absence of any corroborating evidence. To infer that it represents the base rates adopted by the Assessor's predecessor in 2012 requires more than the record can give. There is no evidence that the spreadsheet was ever finalized or that its proposed base rates were ever adopted.[7] Moreover, the two competing base rates in the spreadsheet are listed only as "current" and "proposed" and were expressly disclaimed by the Assessor as authoritative before the taxpayer even claimed an error. There is also no evidence that the base rates in the spreadsheet appear in the Assessor's computer system during the relevant years or that they were applied to any taxpayers in Chevrolet's neighborhood.

The Court is also not persuaded that Chevrolet has shown that the Indiana

---

[7] In its briefing to this Court, Chevrolet points to a statement purportedly made by the Assessor's predecessor in a 2012 document submitted to the Department of Local Government Finance. (*See* Pet'r Br. at 5.) According to Chevrolet, the statement was included on the second page of the document. However, the administrative record does not include a second page for this document, so the statement cannot form the basis for decision here. Even if it could, it would not support Chevrolet's claim. According to Chevrolet, the 2012 document said that a new land order was adopted in 2012. Chevrolet appears to argue that that statement supports an inference that the spreadsheet is that 2012 land order and therefore that the base rates contained in the spreadsheet are the correct rates for 2016 and 2017. But, as recounted by Chevrolet, the statement does not explicitly reference the spreadsheet or give any indication of how, if at all, the spreadsheet relates to the establishment of the base rates in 2012. At most, the statement supports an inference that new base rates were adopted in 2012.

Board's determination was arbitrary, capricious, or an abuse of discretion. To show that its decision was arbitrary and capricious, Chevrolet must show that the decision lacks some basis which could lead a reasonable person to the same conclusion. *Monroe Cnty. Assessor v. Kooshtard Prop. I, LLC*, 38 N.E.3d 754, 758 (Ind. Tax Ct. 2015). To show an abuse of discretion, Chevrolet must show the Indiana Board's decision is "clearly against the logic and effect of the facts and circumstances before it or that it has misinterpreted the law." *Hubler Realty Co. v. Hendricks Cnty. Assessor*, 938 N.E.2d 311, 315 n.5 (Ind. Tax Ct. 2010) (citation omitted). Here, looking at the whole of the evidence presented, it was reasonable for the Indiana Board to reach the conclusion that it did. The record contains ample evidence to support the base rates applied by the Assessor, and, while Chevrolet offered conflicting circumstantial evidence, none of it was so conclusive or incontrovertible as to require the Indiana Board to reach the result sought by Chevrolet. Such conflicts are properly resolved by the Indiana Board as the trier of fact, and it would be inappropriate for this Court to substitute its judgment. Ultimately, the inferences drawn by the Indiana Board were reasonable in light of the evidence contained in the record.[8]

## CONCLUSION

Chevrolet has not demonstrated to the Court that the Indiana Board exceeded the Court's remand order. Nor has it shown that the Indiana Board's final determination

---

[8] Chevrolet also challenges as contrary to law the Indiana Board's holding that "[a]n Assessor need not amend a land order to change base rates for land." (See Pet'r Br. at 6 (quoting Cert. Admin. R. at 212 ¶ 24).) The Court need not address this argument as the case is fully resolved by the Indiana Board's determination of the correct base rates. Resolution of this other issue would not yield a different result.

was arbitrary, capricious, an abuse of discretion, or unsupported by substantial or reliable evidence. Accordingly, the Indiana Board's final determination in this matter is AFFIRMED.