ATTORNEYS FOR PETITIONER:
**MARILYN S. MEIGHEN**
ATTORNEY AT LAW
Carmel, IN

**BRIAN A. CUSIMANO**
ATTORNEY AT LAW
Indianapolis, IN

ATTORNEY FOR RESPONDENT:
**PAUL M. JONES, JR.**
PAUL JONES LAW, LLC
Indianapolis, IN



FILED
May 25 2017, 3:18 pm

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# IN THE
# INDIANA TAX COURT

| | |
|---|---|
| MONROE COUNTY ASSESSOR, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Cause No. 49T10-1512-TA-00032 |
| ) | |
| SCP 2002 E19 LLC 6697, ) | |
| a/k/a CVS 6697-02, ) | |
| ) | |
| Respondent. ) | |

## ON APPEAL FROM A FINAL DETERMINATION OF
## THE INDIANA BOARD OF TAX REVIEW

**FOR PUBLICATION**
**May 25, 2017**

WENTWORTH, J.

The Monroe County Assessor challenges the Indiana Board of Tax Review's final determination establishing the assessed value of SCP 2002 E19 LLC 6697's, a/k/a CVS 6697-02, ("CVS") real property for the 2007 through 2013 tax years (the "years at issue"). Upon review, the Court affirms.

**FACTS AND PROCEDURAL HISTORY**

The property at issue is a 10,800 square foot CVS store that sits on 1.97 acres of land in Bloomington, Indiana. (Cert. Admin. R. at 1634-35.) For each of the years at issue, the Assessor valued the subject property as follows: $3,043,100 (2007); $3,037,700 (2008); $3,059,100 (2009); $2,995,100 (2010); $3,007,300 (2011); $3,021,800 (2012); and $2,978,300 (2013). (Cert. Admin. R. at 129.) Believing these values to be too high, CVS appealed each assessment to the Monroe County Property Tax Assessment Board of Appeals (PTABOA). The PTABOA affirmed the assessments, and CVS subsequently filed appeals with the Indiana Board. The Indiana Board consolidated the appeals and conducted an administrative hearing in November of 2014.

At the administrative hearing, both parties presented appraisal reports done by certified appraisers according to the Uniform Standards of Professional Appraisal Practice (USPAP) for each of the years at issue. (See Cert. Admin. R. at 235-445, 1638-1888.) CVS's appraisal report (the "Coers Report") stated that the cost approach was not applicable because it would not be considered by market participants and there was inadequate data to develop a valid estimate of value using this approach. (Cert. Admin. R. at 410-11.) Therefore, the Coers Report relied solely on the sales-comparison and income approaches, based on a combination of national, regional, and local data, in valuing the subject property at $2,040,000 in 2007; $1,990,000 in 2008; $1,970,000 in 2009; $1,750,000 in 2010; $1,840,000 in 2011; $1,860,000 in 2012; and $2,010,000 in 2013. (Cert. Admin. R. at 328-411, 415-16.)

In contrast, the Assessor's value calculations in its appraisal report (the "Johnson Report") used all three approaches, based on local data, to value the subject property.

2

(Cert. Admin. R. at 1807-08.) The Johnson Report concluded that the cost and income approaches were the most reliable approaches for valuing the subject property, and it relied on them more heavily for its reconciled values of $2,900,000 in 2007; $2,900,000 in 2008; $3,000,000 in 2009; $3,000,000 in 2010; $3,000,000 in 2011; $3,100,000 in 2012; and $3,100,000 in 2013. (See Cert. Admin. R. at 1807-09.)

The Assessor also presented a report prepared by another certified appraiser that reviewed the Coers Report (the "Tillema Review"). (Cert. Admin. R. at 1901-1938.) The Tillema Review was based on the assumption that the Coers Report used an incorrect interpretation of the market value-in-use standard.[1] (Cert. Admin. R. at 1904, 1907, 1913, 1930-31.) Moreover, it specifically stated that the Coers Report was flawed because 1) the cost approach was not applied despite being the most reliable means of valuing the subject property and 2) the sales-comparison and income approaches used non-comparable properties (i.e., vacant properties and "general retail" instead of "ongoing national retail pharmacy" properties). (Cert. Admin. R. at 1904-05, 1907, 1909-13, 1917, 1919, 1921, 1923-25, 1927-28.)

On November 10, 2015, the Indiana Board issued its final determination, finding that the Coers Report's valuation of the subject property under the income approach was the best evidence of its market value-in-use. (Cert. Admin. R. at 178 ¶¶ 119-20.) Thus, the Indiana Board found that the subject property's value was $2,237,402 in 2007,

---

[1] The Real Property Assessment Manual defines a property's market value-in-use as the value "of a property for its current use, as reflected by the utility received by the owner or by a similar user, from the property." 2011 REAL PROPERTY ASSESSMENT MANUAL at 2 (incorporated by reference at 50 IND. ADMIN. CODE 2.4–1–2(c) (2011)); see also Howard Cnty. Assessor v. Kohl's Ind. LP, 57 N.E.3d 913, 917 (Ind. Tax Ct. 2016), review denied.

$2,178,733 in 2008, $2,165,088 in 2009, $1,850,000 in 2010, $1,980,000 in 2011, $1,980,000 in 2012, and $2,180,000 in 2013. (Cert. Admin. R. at 179 ¶ 121.)

The Assessor initiated this original tax appeal on December 22, 2015. The Court heard the parties' oral arguments on October 31, 2016. Additional facts will be supplied as necessary.

## STANDARD OF REVIEW

The party seeking to overturn a final determination of the Indiana Board bears the burden of demonstrating its invalidity. Osolo Twp. Assessor v. Elkhart Maple Lane Assocs., 789 N.E.2d 109, 111 (Ind. Tax Ct. 2003). Accordingly, the Assessor must demonstrate to the Court that the Indiana Board's final determination in this matter is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; contrary to constitutional right, power, privilege, or immunity; in excess of or short of statutory jurisdiction, authority, or limitations; without observance of procedure required by law; or unsupported by substantial or reliable evidence. See IND. CODE § 33-26-6-6(e)(1)-(5) (2017).

## ANALYSIS

On appeal, the Assessor contends that the Indiana Board's final determination must be reversed because it is "random, not supported by substantial evidence, and lacks a coherent/rational basis for the values reached." (Pet'r Br. at 1-2.) In support, the Assessor makes numerous claims that the Court consolidates and restates as 1) whether the final determination is contrary to law because it applies the wrong standard for market value-in-use, and 2) whether the Coers Report provides substantial and reliable evidence of the subject property's market value-in-use because it does not rely on local data.

4

## I. Contrary to Law

The Assessor first claims that the Indiana Board's final determination is contrary to law because it did not value the subject property in accordance with Indiana's market value-in-use standard. (Pet'r Br. at 2.) The Assessor argues that in relying upon the Coers Report, the Indiana Board applied this Court's previous decisions that have interpreted the market value-in-use standard erroneously as fair market value. (See Oral Arg. Tr. at 8, 16, 22-23, 29.) In support, the Assessor states that the addition of Indiana Code §§ 6-1.1-4-43[2] and -44[3] shows that the Legislature intended the Court to interpret the market value-in-use standard differently. (See Pet'r Br. at 1-2, 7; Pet'r Reply at 1-2.)

In a recent case regarding another CVS store in a different location, but involving the same litigants, attorneys, and issues, the Court rejected this same argument. See Monroe Cnty. Assessor v. SCP 2007-C-26-002, LLC, 62 N.E.3d 478, 481 n.1 (Ind. Tax Ct. 2016) (upholding the Court's interpretation of the market value-in-use standard and finding that Indiana Code §§ 6-1.1-4-43 and -44 did not change that standard), review denied. Thus, the Court incorporates its analysis and conclusions in that case here and will not address the argument anew.

---

[2] Indiana Code § 6-1.1-4-43 applied only to assessments made during the 2014 and 2015 assessment years. See IND. CODE § 6-1.1-4-43(a)(1) (2014) (repealed 2016). Accordingly, it does not apply to the years at issue here.

[3] Indiana Code § 6-1.1-4-44 was enacted in 2014 and expressly applied to all assessment appeals pending before the PTABOA or the Indiana Board at that time, including this matter. See IND. CODE § 6-1.1-4-44(a)(2) (2014) (repealed 2016). This statute limited the comparable properties that could be used to determine the market value-in-use of commercial, non-income producing real properties and sale leaseback properties by prohibiting appraisers from using property that had been vacant for a year or more. See I.C. § 6-1.1-4-44(a), (d)(1). The Coers Report's sales-comparison approach used vacant properties that were prohibited by Indiana Code § 6-1.1-4-44(d)(1), and thus the Indiana Board gave it no weight. (Cert. Admin. R. at 171-72 ¶¶ 96-98.)

## II. Unsupported by Substantial or Reliable Evidence

The Assessor further asserts that the Indiana Board's final determination is not supported by substantial or reliable evidence because in its income approach the Coers Report relied too heavily on properties that were not located in Monroe County, and its explanations were inadequate, inconsistent, and conclusory. (Pet'r Br. at 13-17.) The Assessor further argues that the Indiana Board should not have relied on the Coers Report's income approach at all because its values were so close to those determined under its sales-comparison approach, which the Indiana Board had rejected for including properties inconsistent with Indiana Code § 6-1.1-4-44(d)(1). (Pet'r Br. at 15-17.)

A final determination is supported by substantial evidence if the record contains more than a scintilla of evidence in support of the decision and a reasonable person viewing the entire record could find enough relevant evidence to support the Indiana Board's determination. DeKalb Cnty. Assessor v. Chavez, 48 N.E.3d 928, 931-32 (Ind. Tax Ct. 2016). The evidence shows that the Coers Report adjusted the comparable properties used in its income approach to reflect their differences from the subject property and that it provided thorough explanations of the methodologies it employed. (Cert. Admin. R. at 172-73 ¶¶ 100-102; see also, e.g., Cert. Admin. R. at 327-48 (explaining the income approach methodologies).) The Assessor asks the Court, however, to find that this supporting evidence is not persuasive, which is tantamount to asking the Court to reweigh the evidence. This Court will not reweigh the evidence absent an abuse of discretion by the Indiana Board. Hubler Realty Co. v. Hendricks Cnty. Assessor, 938 N.E.2d 311, 315 (Ind. Tax Ct. 2010). "An abuse of discretion may occur if the Indiana Board's decision is clearly against the logic and effect of the facts and

6

circumstances before it, or if the Indiana Board misinterprets the law." Id. at 315 n.5 (internal citations omitted). Here, the Assessor has not identified evidence that demonstrates that the Indiana Board's final determination is against the logic and effect of the facts and circumstances in this matter. Consequently, the Court finds that there is substantial and reliable evidence that supports the Indiana Board's decision and that it did not abuse its discretion.

## CONCLUSION

For the above stated reasons, the Indiana Board's final determination in this matter is AFFIRMED.