ATTORNEYS FOR PETITIONER:
**MARILYN S. MEIGHEN**
ATTORNEY AT LAW
Carmel, IN

**BRIAN A. CUSIMANO**
ATTORNEY AT LAW
Indianapolis, IN

ATTORNEYS FOR RESPONDENT:
**MICHAEL N. RED**
**REBEKAH L. PHILLIPS**
MORSE & BICKEL, P.C.
Indianapolis, IN

# IN THE
# INDIANA TAX COURT

FILED

Aug 03 2020, 3:09 pm

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

| | | |
|---|---|---|
| BARTHOLOMEW COUNTY ASSESSOR, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Cause No. 18T-TA-00021 |
| | ) | |
| HOUSING PARTNERSHIPS, INC., | ) | |
| | ) | |
| Respondent. | ) | |

ON APPEAL FROM A FINAL DETERMINATION OF
THE INDIANA BOARD OF TAX REVIEW

**FOR PUBLICATION**
**August 3, 2020**

WENTWORTH, J.

The Bartholomew County Assessor appeals the Indiana Board of Tax Review's final determination that Housing Partnerships, Inc. qualified for a charitable purposes exemption during the 2008, 2010, 2012, 2014, and 2016 tax years.[1]  Upon review, the Court affirms the Indiana Board's final determination.

---

[1]  Portions of the administrative record in this case have been designated as confidential. Consequently, this opinion will only provide the information necessary for the reader to understand its disposition of the issues presented.  See IND. ST. ACCESS RULE 9(A)(2)(d) (2020).

**FACTS AND PROCEDURAL HISTORY**

During the late 1980s, members of an adult Sunday school class of the First Presbyterian Church in Columbus, Indiana discussed how they could animate the biblical principle that they were "blessed to be a blessing to others in all eyes." (See Cert. Admin. R. at 4278, 4918-19.) After studying their community, they determined that there was a need for affordable housing and home rehabilitation services. (See Cert. Admin. R. at 4919.) Consequently, they solicited donations and began to rehabilitate the homes of people who, due to their age, physical condition, or financial means, were unable to do the work themselves. (See Cert. Admin. R. at 4278, 4919-20.) In 1990, they organized Housing Partnerships as an Indiana not-for-profit corporation.[2] (See Cert. Admin. R. at 1147-52, 4920.)

The founders organized Housing Partnerships exclusively for charitable purposes, declaring its "mission [was] to help neighbors rebuild their neighborhoods and improve their quality of life, with a primary focus on developing affordable housing." (See Cert. Admin. R. at 1150, 4278, 5062-65.) To further that mission, Housing Partnerships operates several programs, including 1) a homeownership program for low-income, first-time homebuyers; 2) a home construction program that provides various development, construction, and repair services on properties owned by municipalities, other not-for-profit organizations, and the elderly; and 3) a home rental program that provides affordable housing for low-income individuals and families. (See, e.g., Cert. Admin. R. at 1168, 4922-24, 4939-40, 5075-87, 5099-101, 5188-89.) Housing Partnerships funds its

---

[2]  Housing Partnerships has also been designated a 501(c)(3) organization by the Internal Revenue Service and is therefore exempt from federal income tax. (See Cert. Admin. R. at 1162-65.)

2

programs with the income it receives from donations, public and private grants, and the sale and rental of its properties. (Compare, e.g., Cert. Admin. R. at 4930 with Cert. Admin. R. at 1175, 1239, 1446, 1452, 1479, 1485-86.) (See also, e.g., Cert. Admin. R. at 5073-74, 5081-82, 5156-57.) This case concerns only Housing Partnerships' home rental program. (See, e.g., Cert. Admin. R. at 4922-23, 5188-90, 5195-96.)

During the years at issue, Housing Partnerships owned an office building, vacant lots, and several residential properties (i.e., single family homes, duplexes, and small apartment buildings) in both Columbus and Hope, Indiana (Bartholomew County). (See Cert. Admin. R. at 4080-226.) Under its home rental program, Housing Partnerships rented its residential properties (or the units in them) to individuals whose annual incomes were at or below 60% of the area median income (adjusted for family size).[3] (See Cert. Admin. R. at 4939-40.) Its rental rates, which were annually verified, typically corresponded to 30% or less of an individual's or family's income. (See Cert. Admin. R. at 3058-60, 3072, 3074-79, 4964, 4996-97, 5046, 5048.)

Housing Partnerships filed Applications for Property Tax Exemption on its office building, vacant lots, and a varying number of its residential properties for one or more of the years at issue. (See Cert. Admin. R. at 12-55, 191-267, 426-92, 650-724, 774-1037.) The applications claimed that all or a portion of the properties, along with the personal property in the office building, were entitled to the charitable purposes exemption because

---

[3] The U.S. Department of Housing and Urban Development determines and reports area median incomes for metropolitan and statistical areas and nonmetropolitan counties. (See Cert. Admin. R. at 1608.) For example, individuals and families living at 80% of the 2014 area median income for Bartholomew County were established at $37,450 for a single person, $42,800 for a family of two, $48,150 for a family of three, and $53,500 for a family of four. (Cert. Admin. R. at 1623-24.) In contrast, those living at 50% of the area median income were set at $23,450 for a single person, $26,800 for a family of two, $30,150 for a family of three, and $33,450 for a family of four. (Cert. Admin. R. at 1622.)

the properties were used to provide housing to low-income individuals and families. (See, e.g., Cert. Admin. R. at 874-81.) The Bartholomew County Property Tax Assessment Board of Appeals denied the applications. (Cert. Admin. R. at 9-11, 71-190, 298-425, 516-649, 770-73.)

Housing Partnerships subsequently filed several Petitions for Review with the Indiana Board, seeking a charitable purposes exemption on 40 properties for the 2008 tax year, 61 properties for the 2010 tax year, 65 properties for the 2012 tax year, 66 properties for the 2014 tax year, and 70 properties for the 2016 tax year.[4] (See, e.g., Cert. Admin. R. at 1-3, 5-8, 56-67, 268-84, 504-15, 729-43.) The Indiana Board conducted a two-day hearing on Housing Partnerships' petitions in August of 2017. During the hearing, Housing Partnerships claimed that it qualified for the charitable purposes exemption because, among other things, its evidence showed that:

1) the government had assumed the burden of providing affordable housing to low-income persons and families;

2) it rehabilitated residences in blighted areas and rented housing at below-market rents to people living at or below 60% of the area median income;

3) it maintained below-market rents after it was no longer obligated to do so;

4) it helped its low-income tenants become financially independent and provided them with access to credit counseling, childcare referrals, and food, clothing, and utility assistance;

---

[4] The actual number of properties at issue for the 2016 tax year, however, is not clear. More specifically, although Housing Partnerships sought an exemption on parcel numbers 03-95-24-420-142.000-005 (646 Franklin Street), 03-95-24-440-007.400-005 (613 Chestnut Street), 03-96-29-210-001.505-005 (Lot #5 McKinley Court), and 03-96-29-210-001.506-005 (Lot #6 McKinley Court) for the 2016 tax year, the certified administrative record does not contain either an exemption application or a final determination by the Bartholomew County Property Tax Assessment Board of Appeals on any of those parcels for that year. (Compare Cert. Admin. R. at 733-39 with Cert. Admin. R. at 770-1037.)

5) it provided tenants with rent concessions rather than evicting them for non-payment of rent and rented to tenants with poor credit histories, non-violent criminal offenses, and prior evictions even though other landlords declined to do so;

6) it used its own funds (secured from private donations, grants, the value of volunteer time, and the sale of certain homes) to operate its home rental program; and

7) its annual audits indicated that there was no private inurement.

(See, e.g., Cert. Admin. R. at 4903-07, 4922-23, 4927-29, 4932-59, 4963-72, 4888-5017, 5021-23, 5028-32, 5046-53, 5059-65, 5161-62, 5174-76, 5249-62, 5265-73, 5314-28, 5359-60, 5362-68, 5371-72.) (See also, e.g., Cert. Admin. R. at 1443-1602 (Housing Partnerships' audited financial statements) 1603-05 (Indiana Housing and Community Development Authority's ("IHCDA") mission statement), 2036-38 (Bartholomew County Section 8 properties), 2988-3011 and 4585-4609 (rental rate reports).)

In response, the Assessor characterized Housing Partnerships' evidence as speculative and conclusory, claiming, among other things, that it failed to show that 1) the government had assumed the burden of providing affordable housing, 2) it relieved any government burden when the government provided it with substantial amounts of grants and subsidies, or 3) its rental rates were consistently below-market. (See, e.g., Cert. Admin. R. at 4642-49, 4680-89, 5067-97, 5136-44, 5147-54, 5178-80, 5373-77, 5442-76, 5504-25, 5545-46.) Moreover, the Assessor claimed that the evidence showed Housing Partnerships was nothing more than a typical landlord because its leases gave it the same rights to evict tenants and impose late fees as landlords in general. (See, e.g., Cert. Admin. R. at 4633-47, 4688.)

On June 29, 2018, the Indiana Board issued a final determination, explaining that although this was a "close case," the totality of the evidence demonstrated that Housing

5

Partnerships owned, occupied, and used its properties exclusively for charitable purposes during the years at issue. (See Cert. Admin. R. at 4770 ¶ 101, 4771-72 ¶ 105, 4778-79.) Specifically, the Indiana Board determined that the record evidence showed that 1) the government had assumed the burden of providing affordable housing to low-income individuals and families in Bartholomew County, 2) Housing Partnerships provided relief from human want by using its properties in a manner unlike that of a typical landlord, and 3) Housing Partnerships relieved some of the government's burden even though it received government grants and subsidies. (See Cert. Admin. R. at 4761-70 ¶¶ 76-101.)

On August 10, 2018, the Assessor initiated this original tax appeal. The Court heard oral argument on June 13, 2019. Additional facts will be supplied as necessary.

## STANDARD OF REVIEW

The party seeking to overturn an Indiana Board final determination bears the burden of demonstrating its invalidity. Osolo Twp. Assessor v. Elkhart Maple Lane Assocs., 789 N.E.2d 109, 111 (Ind. Tax Ct. 2003). Accordingly, the Assessor must demonstrate to the Court that the Indiana Board's final determination is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law; contrary to constitutional right, power, privilege, or immunity; in excess of or short of statutory jurisdiction, authority, or limitations; without observance of the procedure required by law; or unsupported by substantial or reliable evidence. See IND. CODE § 33-26-6-6(e)(1)-(5) (2020).

## LAW

As a general rule, all tangible property in Indiana is subject to taxation. IND. CODE § 6-1.1-2-1 (2008). Nonetheless, Indiana's Constitution provides that the General

6

Assembly may exempt property from taxation if it is used for municipal, educational, literary, scientific, religious, or charitable purposes. IND. CONST. art. 10, § 1(c)(1). To that end, the General Assembly enacted a property tax exemption for real and personal property that is owned, occupied, and used for charitable purposes. See IND. CODE § 6-1.1-10-16(a), (c), (e) (2008) (amended 2016).

The term "charitable purpose" is defined and understood in its broadest constitutional sense. Starke Cty. Assessor v. Porter-Starke Servs., Inc., 88 N.E.3d 814, 817 (Ind. Tax Ct. 2017). Consequently, a charitable purpose generally will be found to exist "when a taxpayer provides probative evidence to the Indiana Board showing 1) 'relief of human want . . . manifested by obviously charitable acts different from the everyday purposes and activities of man in general[ ]' and 2) that a benefit sufficient to justify the loss of tax revenue inures to the public through these acts." Id. (citations omitted).

**ANALYSIS**

On appeal, the Assessor contends that the Indiana Board's final determination must be reversed because it is not supported by substantial evidence.[5] (See, e.g., Pet'r Br. at 7-16; Pet'r Reply Br. at 1-6.) More specifically, the Assessor claims that the Indiana Board erred in finding Housing Partnerships' "minimal, unclear, [] anecdotal[, and conclusory] evidence" satisfied the requirements for exemption. (See, e.g., Pet'r Br. at 10-15; Pet'r Reply Br. at 1-2.) (See also Pet'r Br. at 1 (stating Housing Partnerships "put a few shiny objects in front of the [Indiana] Board, but [it] did not offer evidence to meet

---

[5] The Assessor also has claimed that the Indiana Board's final determination is contrary to law because it misapplied the charitable purposes exemption requirements. (See Pet'r Br. at 1-2, 7; Oral Arg. Tr. at 6.) More specifically, the Assessor's contrary to law claim is that the evidence is insufficient to demonstrate that Housing Partnerships has a charitable purpose. (See, e.g., Pet'r Br. at 10.) The Assessor, however, has done nothing more than dress up a substantial evidence argument in contrary to law clothing. (See, e.g., Oral Arg. Tr. at 6-32.)

7

the requirements for exemption"); Pet'r Reply Br. at 2 (claiming that Housing Partnerships failed "to present 'meat on the bones' evidence" to establish its activities differed from the everyday purposes and activities of man in general and conferred a public benefit).) To support her claim, the Assessor explains, for example, that Housing Partnerships' evidence was insufficient because it did not:

1) compare Housing Partnerships' financial contributions with those of the government to show Housing Partnerships <u>significantly</u> benefited the public;

2) compare the income levels of Housing Partnerships' tenants to the income levels of tenants in conventional/for-profit/non-subsidized rental properties;

3) compare the actual market rent with Housing Partnerships' rents during each of the years at issue;

4) identify the number of Housing Partnerships' properties with below-market rents that had required as opposed to voluntary rent or income restrictions;

5) identify the percentage of Housing Partnerships' tenants who received rent concessions, relaxed payment plans, or escaped eviction due to non-payment of rent during each of the years at issue; and

6) provide the number of potential tenants who were not rejected due to prior evictions, poor credit histories, or their criminal backgrounds.

(<u>See, e.g.</u>, Pet'r Br. at 5, 10-15; Pet'r Reply Br. at 3-6.) Accordingly, the Assessor contends that Housing Partnerships failed to present sufficient facts to establish that it qualified for a charitable purposes exemption, contending that the Indiana Board should have rejected, not approved, its claim for exemption based on a lack of evidence just as it did in a prior case. (<u>See, e.g.</u>, Pet'r Br. at 1-3 (citing generally <u>Housing P'ships, Inc. v. Owens</u> (<u>HPI I</u>), 10 N.E.3d 1057 (Ind. Tax Ct. 2014) (holding that Housing Partnerships' evidence failed to show it qualified for a charitable purpose exemption during the 2006

8

tax year), review denied).)  The Court, however, is not persuaded by the Assessor's arguments for three reasons.

First, the Assessor's arguments merely invite the Court to ignore the Indiana Board's role as trier of fact and reweigh the evidence.  See Madison Cty. Assessor v. Sedd Realty Co., 125 N.E.3d 676, 680 (Ind. Tax Ct. 2019) (providing that the Indiana Board "'determine[s] the relevance and weight to be assigned to the evidence'" because it is the trier of fact) (citation omitted).  The Assessor's arguments neither explain her reasons for claiming that Housing Partnerships' evidence, such as the HUD income reports, county income statics, and actual income data from Housing Partnerships' home rental program is conclusory rather than probative, nor cite to any authority requiring a specific type or quantity of evidence, which if absent, would not support a claim for exemption.  (See, e.g., Cert. Admin. R. at 4642-47; Pet'r Br.; Pet'r Reply Br.)  See also Garrett LLC v. Noble Cty. Assessor, 112 N.E.3d 1168, 1174 (Ind. Tax Ct. 2018) (providing that parties must walk the Indiana Board and this Court through every element of their analyses).  Indeed, the Assessor has attacked the sufficiency and quantity of Housing Partnerships' evidence by simply restating the same arguments that she presented to the Indiana Board during the administrative process.  (See, e.g., Cert. Admin. R. at 4648 (stating that based on "the evidence as a whole, it is apparent that [Housing Partnerships] has offered conclusory statements to support the exemption claimed[ and asked] the [Indiana] Board to infer charity not proven"), 4686 (stating that Housing Partnerships "tries to make a case for exemption based upon general and conclusory testimony and small facts").)  Accordingly, there is substantial evidence to support the Indiana Board's finding, and the Court declines the Assessor's invitation to reverse on this basis.  See Monroe

9

Cty. Assessor v. SCP 2002 E19 LLC 6697, 77 N.E.3d 270, 273 (Ind. Tax Ct. 2017) (providing that the Tax Court will not reweigh the evidence unless the Indiana Board's decision is clearly against the logic and effect of the facts and circumstances before it or it misapplies the law), review denied.

Second, the Assessor claims that Housing Partnerships' evidence was deficient because it did not make certain comparisons or identify certain disparities (e.g., precise income level comparisons or rent concession information). The Assessor implies that Housing Partnership cannot qualify for a charitable purposes exemption because it did not follow a specific evidentiary formula. There is, however, no such formula. This Court has repeatedly explained that because exemption cases stand on their own facts and, ultimately, on how the parties present those facts, determining whether property is owned, occupied, and used for charitable purposes requires undertaking a fact sensitive inquiry that is not susceptible to bright-line tests or abbreviated inquiries. See, e.g., Porter-Starke Servs., 88 N.E.3d at 817-19 (explaining that the holdings in exemption cases involving similar properties differed because of the specific evidentiary presentations and arguments presented, not because of a bright-line test or specific rule). Thus, to the extent that the Assessor believed certain evidence for making comparisons and identifying disparities was essential to the Indiana Board's determination, the Assessor – not Housing Partnerships – was responsible for getting that information into the administrative record. Again, the Court finds substantial evidence supports the Indiana Board's final determination and therefore will not reverse on this basis.

Finally, the Assessor urges the Court to reject Housing Partnerships' claim for exemption just as it did in HPI I, asserting that Housing Partnerships has once again failed

10

to show that 1) there was something "special," presumably something different from man's everyday purposes and activities in general, about the use of its properties, and 2) it provided a benefit to the general public sufficient to justify the loss of tax revenue. (See, e.g., Pet'r Br. at 7; Pet'r Reply Br. at 1-6.) HPI I, however, does not control the outcome here because the parties' evidentiary presentations to the Indiana Board in HPI I and this case differ. See e.g., Porter-Starke Servs., 88 N.E.3d at 817-19 (explaining that the holdings in exemption cases involving similar properties differed because of the specific evidentiary presentations and arguments presented, not because of a bright-line test or specific rule). More specifically, in HPI I Housing Partnerships failed to show its evidence of good deeds provided a public benefit. See, e.g., Housing P'ships, Inc. v. Owens, 17 N.E.3d 403, 404-05 (Ind. Tax Ct. 2014) (affirming the Indiana Board's determination that Housing Partnerships failed to make a prima facie case for a charitable purposes exemption for the 2006 tax year), review denied. Here, however, Housing Partnerships provided evidence that demonstrated its activities differed from the everyday acts of other landlords (e.g., providing below-market rental housing to individuals and families living at 60% of the area median income, granting rent concessions instead of evictions for non-payment of rent, and renting to less than ideal tenants with poor credit histories, non-violent criminal offenses, and prior evictions), and evidence of independent audits established that its government funding was not used for private benefit. See supra pp. 4-5.

The Indiana Board weighed the competing evidence, and while noting it was a "close call," concluded that Housing Partnerships' good deeds provided a public benefit sufficient to justify the loss of tax revenue by lessening the government's burden to

11

provide low income housing. (See, e.g., supra pp. 5-6.) The Indiana Board's determination comports with the evidence and reflects the principle that a taxpayer does not need to show that it completely relieves the government's obligations to qualify for a charitable purposes exemption. See Hebron-Vision, LLC v. Porter Cty. Assessor, 134 N.E.3d 1077, 1095-96 (Ind. Tax Ct. 2019) (providing that "[e]ven when a taxpayer receives government funds, it 'fulfill[s] a charitable purpose to the extent that it lessened some part of the government's burden'") (citations omitted); Knox Cty. Prop. Tax Assessment Bd. of Appeals v. Grandview Care, Inc., 826 N.E.2d 177, 184 (Ind. Tax Ct. 2005) (providing that "Indiana courts have recognized that 'charitable' is not necessarily the equivalent of 'free'"). The Court cannot stand in the shoes of the Indiana Board and reweigh the evidence; therefore, the Assessor has not persuaded the Court to reverse the Indiana Board's final determination on this basis either.

**CONCLUSION**

Based on its review of the evidence in the administrative record, the Court finds that substantial and reliable evidence supports the Indiana Board's determination that Housing Partnerships' properties qualified for a charitable purposes exemption during each of the years at issue. See CVS Corp. v. Searcy, 137 N.E.3d 1053, 1056 (Ind. Tax Ct. 2019) (explaining that the substantial evidence standard requires the Court to review the administrative record to determine whether, when viewed as a whole, it provides a reasonably sound basis of evidentiary support for the Indiana Board's final determination). Accordingly, the Court AFFIRMS the Indiana Board's final determination. The Court, however, REMANDS this matter to the Indiana Board to determine which of Housing Partnerships' properties were at issue during the 2016 tax year. See supra note 4.

12